CITY OF DETROIT *v.* DIVISION 26 OF THE AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY & MOTOR COACH EMPLOYEES OF AMERICA.

1. OFFICERS—PUBLIC EMPLOYEES—STRIKES—STATUTES.
   Statute prohibiting strikes by certain public employees applies only to public employees (CL 1948, § 423.201 *et seq.*).

2. SAME—MUNICIPALLY-OWNED TRANSPORTATION SYSTEM—STATUTES —PUBLIC EMPLOYEES.
   Persons engaged in operating municipally-owned street railway and motor coach system are employees of the city, hence are public employees within meaning of statute prohibiting strikes by certain public employees (CL 1948, § 423.201 *et seq.*).

3. SAME—PUBLIC POLICY—STATUTES—STRIKES—PUBLIC EMPLOYEES.
   Act setting forth that public employees who struck should be deemed to have abandoned and terminated their employment and limiting the right of a public employer to reemploy the public employees who participated in the strike, and substituting mediation in place of ordinary strike procedure was designed, as a matter of public policy, to prevent strikes by public employees (CL 1948, § 423.201 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 13, 14, 16, 18, 21, 28–31] Generally as to validity of collective bargaining agreements, see 31 Am Jur, Labor § 104.

[1, 3, 13, 14, 16, 18, 21, 28–31] Labor union's right with respect to public employment. 162 ALR 1106; 165 ALR 974.

[4] Generally as to court review of administrative action, see 42 Public Administrative Law § 186 *et seq.*

[5, 6, 8, 23] Generally as to bills of attainder, see 11 Am Jur, Constitutional Law § 347.

[11, 12] As to classification under due process clause, see 12 Am Jur, Constitutional Law § 574 *et seq.*
   As to classification under equal protection clause, see 12 Am Jur, Constitutional Law § 476 *et seq.*

[17] 42 Am Jur, Public Officers § 3.

[22] 42 Am Jur, Public Officers §§ 8, 9.

[24–26] 37 Am Jur, Municipal Corporations § 76 *et seq.*

[28] Interference during labor dispute with performance by common carrier or other public utility of its duties to the public as ground for injunctive relief. 149 ALR 1243.

[32] 16 Am Jur, Declaratory Judgments §§ 9, 19.

4. CONSTITUTIONAL LAW—DISTRIBUTION OF POWERS—LABOR MEDIA-
TION BOARD—REMOVAL OF PUBLIC EMPLOYEE FOR CAUSE—APPEAL.
  A decision of the labor mediation board upon appeal from a
  public employer upon hearing by latter to remove an employee
  in the public service for cause, not being the result of judicial
  action, but being at most a quasi-judicial act of an admin-
  istrative tribunal, is not subject to review by the courts on
  appeal and an attempt by the legislature to create a right of
  appeal would be unconstitutional as an endeavor to foist non-
  judicial functions upon the courts (Const 1908, art 4, § 2; CL
  1948, § 423.201 et seq.).

5. SAME—BILLS OF ATTAINDER.
  A bill of attainder is a legislative act which inflicts punishment
  without a judicial trial (US Const, art 1, § 10; Mich Const
  1908, art 2, § 9).

6. SAME—BILLS OF ATTAINDER—STATUTES—PUBLIC EMPLOYEES—
STRIKES.
  Statute prohibiting certain public employees from striking and
  · restricting public employers in the reemployment of public
  employees who have violated the act but which inflicts no
  punishment by way of fine or imprisonment and does not
  deprive a public employee who has taken part in a strike,
  of any vested right, is not, in effect, a bill of attainder (US
  Const, art 1, § 10; Mich Const 1908, art 2, § 9; CL 1948, § 423.-
  201 et seq.).

7. SAME—EMPLOYMENT IN GOVERNMENTAL SERVICE.
  An individual has no vested right, provided by the Constitution,
  to be employed in governmental service or to continue therein.

8. SAME—BILLS OF ATTAINDER—STRIKES BY PUBLIC EMPLOYEES—RE-
EMPLOYMENT—STATUTES.
  Restrictions or limitations upon public employers in the re-
  employment of persons who have violated statute prohibiting
  strikes by certain public employees could not be held to ren-
  der the statute one in the nature of a bill of attainder, since the
  Constitution does not give an individual the right to be em-
  ployed in governmental service or to continue therein (US
  Const, art 1, § 10; Mich Const 1908, art 2, § 9; CL 1948,
  § 423.201 et seq.).

9. SAME—INJURY TO INDIVIDUAL—GOVERNMENTAL FUNCTION.
  An individual has no redress for an injury inflicted upon him
  by the government in the exercise of a governmental function,
  in the absence of a statutory provision for such redress.

10. OFFICERS—PUBLIC EMPLOYEES—REEMPLOYMENT.

Public employment does not vest in public employees any fixed or permanent rights of employment and such employees may terminate their employment singly or in groups, but, having done so, have no vested right to insist upon their reemployment on terms or conditions agreeable to the employees or even without compliance with such conditions, for otherwise public agencies would, be powerless to render public service and administer public affairs.

11. CONSTITUTIONAL LAW—CLASSIFICATION—STATUTES—PUBLIC EMPLOYEES—STRIKES.

The right of public employees to collectively refuse to render the service for which they are employed differs in legal point of view from the right of private employees to strike, hence classification of "public employees" in statute prohibiting public employees from striking, is valid (CL 1948, § 423.201 *et seq.*).

12. SAME—CLASSIFICATION.

The legislature may make classifications of persons, provided such classifications are based on substantial distinctions, are in accord with the aims sought to be achieved, and are not arbitrary or capricious but rest on reasonable and justifiable foundations (US Const, am 14; Mich Const 1908, art 2, § 1).

13. OFFICERS—PUBLIC EMPLOYEES—STRIKES—COMMON LAW.

There is no right to strike on behalf of public employees, under the common law, since it is a means of coercing the delegation of the discretion which a public board or public body must exercise in the fulfillment of its duties.

14. SAME—PUBLIC EMPLOYEES—STRIKES—PUBLIC POLICY—INJUNCTION.

A strike by public employees is against public policy, is unlawful, illegal and may be restrained and enjoined.

15. CONSTITUTIONAL LAW—SOVEREIGNTY—DELEGATION OF POWER.

Sovereignty is inherent in the people but they can delegate it to a government they create and operate by law, empowering and authorizing it to perform certain duties and furnish certain services.

16. SAME—SOVEREIGNTY—PUBLIC EMPLOYEES—STRIKES.

Public employees, as agents of the government, exercise some part of the sovereignty entrusted to it, thereby. occupying a status entirely different from those who carry on a private enterprise, for they serve the public welfare and not a private-

purpose and if permitted to strike would thereby deny the authority of government and contravene the public welfare.

17. OFFICERS—PUBLIC OFFICE—PURPOSE.

Public offices are created for the purposes of government, are delegations of portions of the sovereign power for the public welfare, and are not the subjects of contract but agencies for the State that are revocable at pleasure by the authority creating them unless such authority be limited by the power which conferred it.

18. CONSTITUTIONAL LAW—STRIKES—COMMON LAW.

The absolute right to strike is not conferred either by the common law or by the Fourteenth Amendment to the Constitution of the United States.

19. TORTS—STRIKES.

A strike which runs afoul of statute law or public policy is not entitled to legal protection and may be subject to legal restriction.

20. MUNICIPAL CORPORATIONS—PASSENGER TRANSPORTATION SERVICE —PUBLIC FUNCTION.

A city which has been lawfully empowered by its charter to furnish passenger transportation service to its inhabitants, is thereby performing a municipal and public function, irrespective of whether it is acting in a proprietary or governmental capacity.

21. TORTS—PUBLIC EMPLOYMENT—TERMS AND CONDITIONS—STATUTES—CHARTERS—STRIKES.

Terms and conditions of public employment governed by statute or charter are not subject to modification by contract and concerted labor activity instigated for the purpose of affecting terms and conditions is not sanctioned by law.

22. OFFICERS—PUBLIC EMPLOYEES—SURRENDER OF CIVIL RIGHTS.

The dominant public interest in unimpeded and uninterrupted performance of functions of government may entail the surrender of certain civil rights by those employed in the public service.

23. CONSTITUTIONAL LAW—PUBLIC EMPLOYEES—STRIKES—STATUTES.

Statute prohibiting strikes by certain public employees *held,* not unconstitutional as a bill of attainder, as a deprivation of rights of employees of municipally-owned transportation system without due process of law, as a denial of the equal pro-

tection of the laws, or an impairment of contractual rights possessed by such employees (US Const, art 1, § 10, am 14; Mich Const 1908, art 2, §§ 1, 9, 16).

24. SAME—INTERFERENCE WITH RIGHT TO CONTRACT—STATUTES.

A city within this State is one of the State's governmental agencies and, subject to constitutional provisions, its powers may be limited or restricted, hence, restrictions upon its power to reemploy persons who have violated statute prohibiting strikes by public employees were valid, and such statute was not unconstitutional respecting their right to contract, where there was no restriction upon their right to contract (Const 1908, art 8, §§ 21–23; CL 1948, § 423.201 *et seq.*).

25. SAME—LOCAL SELF-GOVERNMENT—STATUTES.

The right of local self-government granted to municipal corporations does not deprive the legislature of its authority to regulate such public instrumentalities by general statutes affecting their private governmental functions (Const 1908, art 8, §§ 21–23).

26. MUNICIPAL CORPORATIONS—STATUTES—EMPLOYMENT OF LABOR.

The legislature has the power to determine on what terms municipal corporations shall be allowed to engage in the employment of labor, if at all, the collective and individual rights of the citizens being duly preserved (Const 1908, art 8, §§ 21–23).

27. SAME—OPERATION OF PUBLIC UTILITY—PUBLIC ENTERPRISE.

A municipality's operation of a public utility, although it may be a proprietary activity, constitutes engaging in a public enterprise for a public purpose.

28. INJUNCTION—STATUTES—STRIKES—PUBLIC EMPLOYEES.

Injunctive relief against enforcement of statute prohibiting strikes by public employees is denied such employees who have been subject to the act and violated it (CL 1948, § 423.201 *et seq.*).

29. MUNICIPAL CORPORATIONS—PUBLIC EMPLOYEES—LABOR DISPUTE —MEDIATION.

City did not breach any legal duty to mediate labor dispute with employees of its municipally-owned transportation system, where neither side had taken necessary steps to have labor dispute mediated by State labor mediation board as provided by statute and counsel who had been conducting negotiations cancelled pending negotiations because of belief in lack of authority to participate therein, hence provision of decree

requiring city to resume formal mediation before the State labor mediation board was error (CL 1948, § 423.201 *et seq.*).

30. SAME—PUBLIC EMPLOYEES—STRIKE—REEMPLOYMENT.

A city as employer of employees operating a municipally-owned passenger transportation system who had gone out on strike in violation of statute prohibiting public employees from striking and restricting their reemployment is not compelled to offer and give the strikers an opportunity to return to work under the terms, conditions, rights and benefits under which they were working before they struck and without penalties set forth in such statute (CL 1948, § 423.201 *et seq.*).

31. SAME—PUBLIC EMPLOYEES—STRIKES—MEDIATION.

Mediation by city of labor dispute with its employees which had gone out on strike may be had by compliance with pertinent section of act prohibiting strikes by public employees but until such steps have been taken city may not be compelled to mediate, although it might do so voluntarily (CL 1948, § 423.-207).

32. APPEAL AND ERROR — DECLARATORY DECREE — SUPPOSITITIOUS ISSUE.

Supposititious issue concerning a matter not decided by the trial court does not present an issue for a declaratory decree by the Supreme Court.

Appeal from Wayne; Jayne (Ira W.), J. Submitted October 5, 1951. (Docket No. 46, Calendar No. 45,225.) Decided January 7, 1952. Rehearing denied March 6, 1952. Application for leave to appeal granted by the Supreme Court of the United States June 2, 1952.

Bill by City of Detroit against Division 26 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America and others to restrain certain acts and for declaration of validity of Hutchinson act. Cross bill by defendants against plaintiff to prevent enforcement of said act. United DSR Employees Local 312, CIO, and others intervene. Decree declaring act valid and requiring mediation among other things. Plaintiff appeals. Defendants cross-appeal. Decree entered in Supreme Court upholding validity of act and answering certain pertinent questions.

*Paul T. Dwyer,* Acting Corporation Counsel, *Bert R. Sogge, Helen W. Miller, Walter E. Vashak,* Assistants Corporation Counsel, and *James S. Shields,* Principal Attorney, Department of Street Railways, for plaintiffs.

*Edward N. Barnard,* for defendants.

*Rothe, Marston, Edwards, Bohn & Mazey,* for intervenors.

NORTH, C. J. This litigation was started by a bill in equity filed in the Wayne county circuit court by the city of Detroit acting through its board of street railway commissioners. Injunctive relief is prayed; also a ruling as to the constitutionality of the so-called Hutchinson act (PA 1947, No 336 [CL 1948, § 423.201 *et seq.* (Stat Ann 1950 Rev § 17.455 [1] *et seq.*)]);* its application to Detroit's transportation

---

* We note the material portions of the Hutchinson act—PA 1947, No 336 (CL 1948, §§ 423.201–423.207 [Stat Ann 1950 Rev §§ 17.455 (1)–17.455 (7)]):

"An act to prohibit strikes by certain public employees; to provide certain disciplinary action with respect thereto; to provide for the mediation of grievances; and to prescribe penalties for the violation of the provisions of this act."

Section 1 is the statutory definition of the word "strike."

"Sec. 2. No person holding a position by appointment or employment in the government of the State of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike. * * *

"Sec. 4. Notwithstanding any other provision of law, any public employee who violates the provisions of this act shall thereby abandon and terminate his appointment or employment and shall no longer hold such position, or be entitled to any of the rights or emoluments thereof, including pension or retirement rights or benefits, except if appointed or reappointed as hereinafter provided. * * *

"Sec. 5. Notwithstanding any other provision of law, a person knowingly violating the provisions of this act may subsequent to such violation be appointed or reappointed, employed or reemployed, as a public employee, but only upon the following conditions:

system and the employees therein, and other related controverted issues. Issues were formed by the answer of the above-named original defendants and their cross bill, to which plaintiff answered; and by the answer to plaintiff's bill of complaint filed by United DSR Employees Local 312 C.I.O., one of the above-named parties who were permitted to intervene as defendants. The real parties defendants in interests are the employees in Detroit's department of street railway system, owned by the city and operated by its board of street railway commissioners. Following a lengthy pretrial hearing, incident to which there was a stipulation of certain facts, testimony was taken in open court. From the decree entered plaintiff has appealed and the original defendants have cross-appealed.

Throughout the proceedings which culminated in this litigation, the Detroit street railway employees were represented by their bargaining agent, Division 26 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America. The pending controversy primarily arose incident to the employees' demand for an increase in base pay. The immediately preceding contract between the city

"(a) His compensation shall in no event exceed that received by him immediately prior to the time of such violation;

"(b) The compensation of such person shall not be increased until after the expiration of 1 year from such appointment or reappointment, employment or reemployment; and

"(c) Such person shall be on probation for a period of 2 years following such appointment or reappointment, employment or reemployment, during which period he shall serve without tenure and at the pleasure of the appointing officer or body."

Section 6 provides that the employee, for the purpose of showing he did not violate the provisions of this act, may have a prompt hearing before and a determination by the officer or body having power to discharge the employee and a right of review by the employee before the labor mediation board, as provided for in section 7 of this act.

Section 7 provides for mediation of grievances by the labor mediation board and the powers and duties of that board as provided by PA 1939, No 176, §§ 10, 11 (CL 1948, §§ 423.10, 423.11). PA 1939, No 176, §§ 10, 11, are not altered by PA 1949, No 230, which amends PA 1939, No 176.

and these employees, by its terms, had expired. Following quite extended negotiations, and on April 17, 1951, the union took a vote of its membership on 2 questions, the first of which was: "Do you favor a strike?" and the second was: "Do you favor arbitration?" The vote resulted overwhelmingly in favor of the first question, namely to strike. While the foregoing vote is claimed by defendants to have been merely advisory, a strike was called which went into effect April 21, 1951. With minor exceptions, this strike caused complete cessation of the public transportation service theretofore rendered by plaintiff through its street railway department. This condition continued until the employees on June 18, 1951, returned to work under the terms of the circuit judge's opinion which was filed at the conclusion of the trial had in the interim. The decree was filed June 26, 1951.

The trial court decreed the Hutchinson act constitutional and that it was applicable to "plaintiff and all of its employees." Defendants have appealed from these provisions in the decree. The issue of constitutionality of the Hutchinson act, which is challenged by the defendants and cross-appellants, is of primary importance and is first considered herein.

In reaching decision in the instant case it is essential to keep in mind that the provisions of the Hutchinson act apply only to "public employees." And also that, as hereinafter held, the persons engaged in operating Detroit's street railway system are employees of the city of Detroit and hence are "public employees." The act is designed, as a matter of public policy, to prevent strikes by public employees (*Local Union No. 876, International Brotherhood of Electrical Workers* v. *State Labor Mediation Board,* 294 Mich 629) by providing that by striking, such an employee "shall thereby abandon and terminate his appointment or employment," and by limiting or

restricting the right of the public employer to reemploy a public employee who participated in a strike. It provides for substituting mediation in place of ordinary strike procedure, and that either party, by proper application, may obtain mediation.

A basic reason urged by cross-appellants in challenging the constitutionality of the Hutchinson act is that it contains no provision for judicial review of rights asserted by a discharged public employee, and hence they are deprived of due process of law. However, by section 6 of the act provision is made for such an employee to have a hearing before the officer or body having power to remove such employee, and for a right of review of a holding adverse to such employee before the labor mediation board. We have held that like provisions are quasi-judicial and afford to the discharged employee compliance with his constitutional rights. In *Re Fredericks*, 285 Mich 262 (125 ALR 259), a headnote reads:

"A decision of a municipal civil service commission upon a hearing to remove an employee of a fire department for cause, not being the result of judicial action, but being at most a quasi-judicial act of an administrative tribunal, is not subject to review by the courts on appeal and an attempt by the legislature to create a right of appeal would be unconstitutional as an endeavor to foist nonjudicial functions upon the courts."*

See, also, *Goodfellow v. Detroit Civil Service Commission*, 312 Mich 226; *Local 170, Transport Workers Union of America v. Genesee Circuit Judge*, 322 Mich 332.

Cross-appellants rather strenuously also contend that this statute is unconstitutional since it is in effect a bill of attainder. We cannot so hold. "A bill of attainder is a legislative act which inflicts punish-

---

* See Const 1908, art 4, § 2.—Reporter.

ment without a judicial trial." *Inland Steel Co.* v. *National Labor Relations Board* (CCA), 170 F2d 247, 267, affirmed, *American Communications Ass'n, CIO* v. *Douds,* 339 US 382 (70 S Ct 674, 94 L ed 925). See, also, *Garner* v. *Board of Public Works of Los Angeles,* 341 US 716 (71 S Ct 909, 95 L ed 1317). The Hutchinson act provides certain limitations and regulations, but it "inflicts" no punishment. It does not provide for fines or imprisonment, nor does it deprive a public employee, who has taken part in a strike, of any vested right.

We know of no constitutional provision which gives an individual the right to be employed in governmental service or to continue therein. If there is no such right then there is no constitutional inhibition of reasonable restrictions or limitations being applied thereto; and such restrictions or limitations could not be held to be in the nature of bills of attainder. See *Bailey* v. *Richardson,* 89 App DC 248 (182 F2d 46, 63), wherein the court said:

"But it has long been established that if the government, in the exercise of a governmental power, injures an individual, that individual has no redress. * * *

" 'As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative,' and the court [in *Gregoire* v. *Biddle* (CCA), 177 F2d 579] concluded that both upon authority and upon reason the rule laid down should be followed."

There is ample authority to the effect that public employment does not vest in such employees any fixed or permanent rights of employment. As individuals or in groups public employees may discontinue their employment, but, having done so, such public employees have no vested right to insist upon their reemployment on terms or conditions agreeable to the employees, or even without compliance with

such conditions. To hold otherwise would result in public agencies being powerless to render public service and to effectively administer public affairs; and the public would thereby be deprived of its right to efficient government. For example, if the members of a fire department or of a police department collectively refuse to continue to serve except upon conditions insisted upon by them, unless their employer supinely yielded, the public, which by taxation pays therefor, would be deprived of fire or of police protection; and the right or power to exercise essential governmental affairs nullified. There seems to be ample reason and authority for holding that the right of public employees to collectively refuse to render the service for which they are employed differs in legal point of view from the right of private employees to strike, and hence the classification of "public employees" for the purpose of applicable legislation is valid.

"The legislature may make classifications of persons, provided such classifications are based on substantial distinctions, are in accord with the aims sought to be achieved, and are not arbitrary or capricious but rest on reasonable and justifiable foundations." *People* v. *Chapman* (syllabus), 301 Mich 584.

Among authorities with which we are in accord and which support our decision herein, are the following:

"The question is whether or not public employees do have the right to strike. Under the common law,— and there is no question about it so far as this court is concerned,—there is no right to strike on behalf of public employees, for many reasons, some of which at least, might be paraphrased in the language of several of the decisions, that it is a means of coercing the delegation of the discretion which a public board

or public body must exercise in its fulfillment of its duties. (Citing several cases.)    *    *    *

"It has been repeatedly stated that it is against public policy for public employees to strike. Many courts have held that a strike by public employees is against public policy, is unlawful, illegal and may be restrained and enjoined." *City of Cleveland* v. *Division 268,* 41 Ohio Op 236 (90 NE2d 711).

We are mindful that the foregoing quotation is from the opinion of a court of inferior jurisdiction, rather than one of last resort; but the holding therein is in accord with decisions rendered by courts of highest judicial authority.

"Congress has the power to regulate, within reasonable limits, the political conduct of Federal employees, in order to promote efficiency and integrity in the public service.    *    *    *

"The fundamental human rights guaranteed by the First, Fifth, Ninth and Tenth Amendments are not absolutes; and this court must balance the extent of the guarantee of freedom against a congressional enactment to protect a democratic society against the supposed evil of political partisanship by employees of the government." *United Public Workers of America* v. *Mitchell* (syllabi), 330 US 75 (67 S Ct 556, 91 L ed 754).

The case of *Bailey* v. *Richardson, supra,* was decided in the United States court of appeals for the District of Columbia. Three United States circuit judges sat in the case, one of whom dissented from the prevailing opinion. The decision of the circuit court of appeals was reviewed on certiorari by the supreme court of the United States, and there affirmed by an equally divided court (341 US 918 [71 S Ct 669, 95 L ed 1352]). A detailed opinion was not written by the United States supreme court, and therefore we quote the following from the headnotes.

of the decision rendered in the circuit court of appeals:

"If a Federal government employee has no constitutional right to office, and executive officers have power to dismiss the employee, the fact that dismissal on ground of superiors' belief in employee's disloyalty to the Federal government imposes a stigma and seriously impairs employee's future chances of making a living does not entitle employee to court review of the dismissal. * * *

"Dismissal of a Federal employee in the classified civil service without trial because superiors have grounds which to them are reasonably sufficient to believe that employee is disloyal to the government of the United States involves no rights of the employee and does not violate requirements of due process of law guaranteed by the Fifth Amendment."

In *Norwalk Teachers' Ass'n* v. *Board of Education of City of Norwalk* (1951), 138 Conn 269 (83 A2d 482), the court denied any right of public employees to strike, and in the course of its opinion said:

"In the American system, sovereignty is inherent in the people. They can delegate it to a government which they create and operate by law. They can give to that government the power and authority to perform certain duties and furnish certain services. The government so created and empowered must employ people to carry on its task. Those people are agents of the government. They exercise some part of the sovereignty entrusted to it. They occupy a status entirely different from those who carry on a private enterprise. They serve the public welfare and not a private purpose. To say that they can strike is the equivalent of saying that they can deny the authority of government and contravene the public welfare."

While the case of *Jeffries* v. *Election Commission of the County of Wayne,* 294 Mich 255, concerned

rights in public office, the following statement contained therein might well be applied to one occupying a place of public employment. We quote:

"The question of property right in public office has been definitely settled in this State.

" 'A public office cannot be called "property," within the meaning of these constitutional provisions [United States Constitution, Fifth Amendment—due process, and Fourteenth Amendment—equal protection of law]. If it could be, it would follow that every public officer, no matter how insignificant the office, would have a vested right to hold his office until the expiration of the term. Public offices are created for the purposes of government. They are delegations of portions of the sovereign power for the welfare of the public. They are not the subjects of contract, but they are agencies for the State, revocable at pleasure by the authority creating them, unless such authority be limited by the power which conferred it.' *Attorney General, ex rel. Rich, v. Jochim,* 99 Mich 358, 367 (23 LRA 699, 41 Am St Rep 606)."

Other decisions in this jurisdiction pertinent to the proposition that limitations or restrictions may be placed upon rights the public employees might otherwise possess, will be found in *Fraternal Order of Police* v. *Lansing Board of Police & Fire Com'rs,* 306 Mich 68, certiorari denied, 321 US 784 (64 S Ct 781, 88 L ed 1076) ; *Goodfellow* v. *Detroit Civil Service Commission, supra; State Lodge of Michigan Fraternal Order of Police* v. *City of Detroit,* 318 Mich 182, certiorari denied, 332 US 818 (68 S Ct 156, 92 L ed 395).

Because the decision in *City of Los Angeles* v. *Los Angeles Building & Construction Trades Council,* 94 Cal App2d 36, is applicable to various phases of the instant case, we quote somewhat at length from the headnotes of that case as reported in 210 P2d 305:

"Neither the common law, nor the Fourteenth Amendment, confers the absolute right to strike.

"A strike which runs afoul of statute law or public policy is not entitled to legal protection and may be subject to legal restriction.   *   *   *

"City of Los Angeles, having been lawfully empowered by its charter to furnish water and electricity to its inhabitants, is thereby performing a municipal and a public function, irrespective of whether it is acting in a proprietary or governmental capacity.   *   *   *

"To the extent that terms and conditions of public employment are governed by statute or charter, they are not subject to modification by contract, and concerted labor activity instigated for purpose of affecting terms and conditions is not sanctioned by law.

"Employment in public service frequently entails a necessary surrender of certain civil rights to a limited extent because of dominant public interest in unimpeded and uninterrupted performance of functions of government."

In view of the foregoing and, also, in accord with authorities hereinafter noted, it cannot be held, as defendants and cross-appellants contend, that by the Hutchinson act the striking employees of Detroit's street railway system are subjected to a statute which violates the United States Constitution (art 1, § 10) and the State Constitution [1908] (art 2 § 9), prohibiting passage of bills of attainder; nor that they are deprived of rights without due process of law (United States Constitution, Fourteenth Amendment; State Constitution [1908], art 2, § 16); nor of equal protection of the laws (United States Constitution, Fourteenth Amendment; State Constitution [1908], art 2, § 1).   Nor are we in accord with cross-appellants' contention that this act impairs contractual rights possessed by employees of Detroit's street railway system, in violation of constitutional provisions (United States Constitution, art

1, § 10; State Constitution [1908], art 2, § 9). The Hutchinson act cannot be held unconstitutional on any of the grounds just above noted.

Unconstitutionality of this act is also urged by cross-appellants on the ground that it restricts the right of employees to contract. We do not find in the act any restriction on the right of *employees* to contract. Instead, the restrictions on the right or power to contract are embodied in sections 3, 4a and 5 of the act. They are restrictions on and only on the power of the public employer to contract. The city of Detroit is merely 1 of the State's governmental agencies; and, subject to constitutional provisions, the State may limit or restrict the powers of such governmental agencies. *City of Kalamazoo* v. *Titus,* 208 Mich 252.

Cross-appellants' and an intervening defendant's contention that the Hutchinson act is unconstitutional because it transgresses Michigan's constitutional home-rule provisions (State Constitution [1908], art 8, §§ 21–23), is answered by the fact that if the Detroit city charter, which authorizes the city to own and operate a street railway system, has in it provisions which conflict with the statutory law involved in this case, such charter provisions are invalid because article 8, § 21, of the State Constitution provides that such provisions are "subject to the Constitution and general laws of this State." *Local Union No. 876, International Brotherhood of Electrical Workers* v. *State Labor Mediation Board, supra.* See, also, *City of Kalamazoo* v. *Titus, supra;* and *Wood* v. *City of Detroit,* 188 Mich 547 (LRA 1916C 388), wherein the headnotes in part read:

"Under the new Constitution (1908) the right of local self government granted to municipal corporations does not deprive the legislature of its authority to regulate such public instrumentalities by general

enactments affecting their private governmental functions.

"No constitutional right of the corporation is infringed because the statute compels the municipality to respond in damages [workmen's compensation act] to servants who may have been injured without fault of the employer, since the legislature has the power to determine on what terms municipal corporations shall be allowed to engage in the employment of labor, if at all, the collective and individual rights of the citizens being duly preserved."

On this phase of the instant appeal cross-appellants and an intervening defendant-appellee rely very much on *People, ex rel. LeRoy,* v. *Hurlbut,* 24 Mich 44 (9 Am Rep 103). That case had to do only with a wholly different phase of law, and is not at all applicable to the instant case. The holding in the *Hurlbut Case* was to the effect that the legislature could not name or appoint the persons who should be the city's officers charged with purely local duties pertaining to the city's affairs, as is indicated by a headnote about to be quoted. No such issue is presented in the instant case.

"The legislature had no power to make the appointment of the members of the board of public works of the city of Detroit, as permanent officers for the full term, or the specific portions of such terms, provided by the act establishing such board *(3 Sess. L. 1871, p 273),*\* for the respective members thereof. Permanent appointments for purely municipal purposes can only be made by municipal authority."

We are in accord with the holding of the trial judge that the employees of Detroit's street railway system are employees of the city of Detroit, and therefore are "public employees" within section 2 of the Hutchinson act, which includes as a

---

\* LA 1871, No 494.—Reporter.

"public employee" any person "holding a position * * * or employment * * * in the service of any authority, commission, or board" in public service. Conclusively these employees are in the city's service, having been so employed by Detroit's street railway commissioners, who are also city employees in charge of this street railway system, which is owned and controlled by the city of Detroit. The record on this appeal discloses that incident to acquiring and operating its street railway system the city of Detroit issued in large amounts full faith and credit bonds, and also so-called revenue bonds. In considering this phase of the case we are mindful of, but not in accord with cross-appellants' contention, that since the operation by the city of its street railway system is the exercise of a proprietary rather than a governmental function, the persons employed therein are not public employees, but instead are employees of Detroit's board of street railway commissioners, which by city's charter provision is authorized to contract for such employment.

"We have recognized that a municipality's operation of a public utility, although it may be a proprietary activity, constitutes engaging in a public enterprise for a public purpose." *Wolgamood* v. *Village of Constantine,* 302 Mich 384, 394.

"For the purpose of this case, the miners are employees of the government, even though the private managers of the mines have been retained as operating managers for the government and the regulations provide that none of the earnings or liabilities resulting from the operation of the mines are for the account or at the risk or expense of the government." *United States* v. *United Mine Workers of America* (syllabus), 330 US 258 (67 S Ct 677, 91 L ed 884).

Contrary to cross-appellants' contention, it follows that the Hutchinson act is applicable to those employed in Detroit's department of street railways.

In view of our holding herein, the injunctive relief sought by cross-appellants, which in part is that plaintiff be enjoined "from enforcing or applying or causing to be enforced or applied, PA 1947, No 336," must be denied. And we also note that since prior to entry of decree the Detroit street railway employees returned to their employment, plaintiff-appellant is not asking for the injunctive relief prayed in the bill of complaint filed May 18, 1951, which briefly was that defendants, their agents and employees, be restrained from participation in the then pending strike or picketing incident thereto.

Appellant's brief also presents the following questions as to which a declaratory decree is sought:

(1) "Prior to the strike, did the city have, and breach, any legal duty to mediate under the State labor mediation board?"

We think this interrogatory must be answered in the negative. The Hutchinson act, in section 7, provides the procedure by which either party to this type of a controversy may have a hearing before the State labor mediation board. In this case neither party complied with the prescribed procedure. The trial court was of the opinion that the city had breached its legal duty to submit to mediation, and accordingly decreed that: "Both parties shall resume formal mediation before the State labor mediation board." Evidently the circuit judge based his conclusion in this respect on the fact that on April 20, 1951, both the State and Federal mediation representative sought to obtain the consent of both parties to this controversy to submit to mediation. In consequence Mr. Hough, who was the labor relations counsel of the department of street railways and who had taken part in negotiations between these litigants, at first agreed to meet with the Federal labor conciliator and the representative of the State

labor mediation board, together with the union representatives. But, shortly thereafter and before the time set for the meeting, Mr. Hough cancelled this arrangement in the belief that he did not at that time have authority to participate in such a meeting. There had been no prior mediation, but only negotiations between the parties. Since demand for mediation had not been made by either party in the manner provided by the statute, we cannot agree with the conclusion of the circuit judge that the noted incident constituted a breach on the part of the city to submit to mediation, and therefore we are not in accord with the above-noted provision in the circuit court's decree.

(2) "After the strike can, and must, the city offer and give the strikers an opportunity to return to work under the terms, conditions, rights and benefits under which they were working before they struck, and without the penalties of PA 1947, No 336, so accept them; and continue to so treat them?"

In view of our conclusion that the Hutchinson act is constitutional and applicable to the employees of Detroit's street railway system, the foregoing question must be answered in the negative.

(3) "Is it now the city's legal duty to mediate, and continue to mediate, with the returned strikers, under the State labor mediation board?"

While we know of no reason in law why the city might not voluntary submit to mediation the matters involved in this controversy, under the instant record it must be held that such is not a "legal duty" of the city; but obviously mediation, if desired, may be brought about by either party by complying with the provisions of section 7 of the Hutchinson act.

(4) "Can the city, within 1 year, pay the returned strikers any increase in base or hourly wage rate

which would come only from its savings resulting from 'fringe' changes?"

The expression "fringe" includes payments for overtime, report and turn-in time, spread time, sick leave, holiday pay, et cetera. Concerning this phase of the appeal, the following is stated in the city's brief:

"Before the strike, in the negotiations, the city tried to eliminate or change some of the old 'agreement's' terms as to 'fringes' and to thereby effect a reduction or saving to the city in the gross amount of all the money or 'compensation' it was paying for operators' work. This saving the city was willing to use to increase the hourly or 'base' rate of pay. * * * The union, always insistent on an increase in the hourly rate first, never agreed to any of these suggested 'fringe' changes, and struck."

As a matter of fact, negotiations between these parties terminated because of the controversy as to the constitutionality of the Hutchinson act, and without reaching any agreement or disagreement as to the right of the city to increase the employees' base pay by minimizing the amount heretofore expended incident to the "fringe" provisions of the former contract.

Cross-appellants in their brief concerning this phase of the record say: "We fully agree with the city. We see no impediment under the Hutchinson act." In view of the foregoing it is obvious that this interrogatory, which pertains to a matter which was not decided by the lower court, relates to a supposititious issue concerning which the record does not disclose there is disagreement between the parties. In consequence an issue for a declaratory decree in this respect is not presented. *Village of Grosse Pointe Shores* v. *Ayres,* 254 Mich 58; cited and quoted in *School District No. 1, Fractional,* v.

*School District of the City of Lansing*, 331 Mich 523.

Neither party having fully prevailed, no costs will be awarded. A decree may be taken in this Court in accordance with our opinion herein.

Dethmers, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred. Butzel, J., did not sit.