RICHARDSON v JACKSON COUNTY

Docket Nos. 80977, 81199. Argued October 5, 1988 (Calendar No. 5).
Decided June 6, 1989. Rehearing denied *post,* 1240.

Lawrence A. Richardson, Jr., as personal representative of the
estate of Louis Allen, Jr., deceased, brought an action in the
Jackson Circuit Court against Jackson County and Summit
Township, the owner and the operator, respectively, of a park
and swimming beach on Vandercook Lake where the decedent
drowned, alleging wilful and wanton misconduct by the defen-
dants in creating and setting aside a swimming area containing
a dangerous drop-off without proper warnings. The court,
Charles J. Falahee, J., denied the defendants' motion for sum-
mary judgment on the basis of governmental immunity. The
Court of Appeals, MICHAEL J. KELLY, P.J., and HOLBROOK, JR.,
and T. M. GREEN, JJ., affirmed in an opinion per curiam,
holding that because the defendants failed to comply with the
buoy application, inspection, permit, and placement provisions
of § 141 of the Marine Safety Act, their operation of the beach
was prohibited by § 192 of the act and, thus, ultra vires and
outside the protection of the governmental immunity act
(Docket Nos. 85278, 85335). The defendants appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice
RILEY, and Justices BOYLE and GRIFFIN, the Supreme Court
*held*:

The governmental agencies in this case are immune from
liability under the governmental immunity act.

1. Governmental agencies are immune from tort liability for
injuries arising out of the exercise or discharge of a governmen-
tal function. A governmental function is any activity expressly
or impliedly mandated or authorized by the constitution, a
statute, or other law. Immunity does not extend to injuries
arising out of activities which are ultra vires, i.e., not expressly
or impliedly mandated or authorized by law.

2. The Legislature, in 1917 PA 156, granted governmental

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
§§ 67, 104-106, 155-157, 312, 315-317.

See the Index to Annotations under Beaches and Shores; Govern-
mental Immunity or Privilege; Swimming and Swimming Pools.

agencies such as Jackson County and Summit Township the authority to operate, equip, and maintain facilities such as the beach in question as recreational facilities, and it did not withdraw that delegation of power by regulating how such swimming areas are to be marked under the Marine Safety Act. Nothing in § 192 or § 141 of the Marine Safety Act suggests an intent to modify the grant of authority in 1917 PA 156. Nor are the acts in pari materia; thus, the specific Marine Safety Act does not control the earlier, general 1917 PA 156.

3. Enabling acts, such as 1917 PA 156, which grant authority in broad terms, must be distinguished from regulatory statutes such as the Marine Safety Act. Improper performance of an activity authorized by law, despite its impropriety, is still authorized for purposes of the governmental function test. An agency's violation of a regulatory statute that requires performance of an activity in a certain way cannot render the activity ultra vires. In applying the governmental function test of the governmental immunity statute, the Court must consider the statute's breadth. The statute extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function. Nothing in the governmental immunity act suggests an intent to treat a failure to meet a condition precedent, such as obtaining a license or permit, any differently for immunity purposes than the failure to meet other sorts of regulatory duties. Nor was it intended that the term "governmental function" be interpreted so that immunity for activity authorized generally by statute should evaporate upon the failure to perform a regulatory condition contained in another statute. Ultra vires activity is not an activity that a governmental agency performs in an unauthorized manner; it is activity that the governmental agency lacks legal authority to perform in any manner.

Reversed.

Justice BRICKLEY, joined by Justices LEVIN and ARCHER, dissenting, stated that the conceded failure of the defendants to satisfy the conditions precedent embodied in §§ 141 and 192 of the Marine Safety Act rendered the operation of the swimming beach an unauthorized activity, and thus liability for the alleged tort arising out of the activity is not barred by governmental immunity.

The state may withhold, grant, or withdraw the powers and privileges of local governmental bodies relating to matters of statewide concern, such as health and safety, as it sees fit. A permit is a type of license, i.e., permission by competent au-

thority to do something, such as operating a swimming facility, that without such permission would be illegal. The Marine Safety Act requires a permit for placement of buoys before public swimming is allowed, and prohibits operation of a swimming area without such a permit. The act expressly withdraws the previous, implied grant of authority of MCL 123.51; MSA 5.2421 to operate a swimming facility. In this case, the operation of the swimming area was not authorized; therefore, liability for the drowning of the decedent which resulted from the alleged failure to warn him adequately of dangerous conditions in the lake is not barred by governmental immunity.

159 Mich App 766; 407 NW2d 74 (1987) reversed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — MANDATORY REGULATIONS — ULTRA VIRES ACTIVITIES.

Improper performance of an activity authorized by law, despite its impropriety, is still authorized for purposes of the governmental function test of governmental immunity; an agency's violation of a regulatory statute that requires performance of an activity in a certain way cannot render the activity ultra vires.

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — MANDATORY REGULATIONS — ULTRA VIRES ACTIVITIES.

Nothing in the governmental immunity act suggests an intent to treat a failure to meet a condition precedent, such as obtaining a license or permit, any differently for immunity purposes than the failure to meet other sorts of regulatory duties; nor was it intended that the term "governmental function" be interpreted so that immunity for activity authorized generally by statute should evaporate upon the failure to perform a regulatory condition contained in another statute; ultra vires activity is not an activity that a governmental agency performs in an unauthorized manner; it is activity that the governmental agency lacks legal authority to perform in any manner (MCL 691.1407; MSA 3.996[107]).

3. GOVERNMENTAL IMMUNITY — RECREATIONAL FACILITIES — MARINE SAFETY ACT.

The failure of governmental agencies to comply with buoy application, inspection, permit, and placement provisions of the Marine Safety Act with respect to the operation of a swimming beach, which the agencies had the authority to operate under 1917 PA 156, did not render the operation ultra vires and outside the protection of the governmental immunity act (MCL 123.51, 281.1141, 281.1192, 691.1407; MSA 5.2421, 18.1287[141], 18.1287[192], 3.996[107]).

*Barr & Arsenault* (by *Charles J. Barr, Tod E. Rutila,* and *Mary Ann Arsenault*) for the plaintiff.

*Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C.* (by *Charles A. Nelson*), for the defendants.

*Foster, Swift, Collins & Coey, P.C.* (by *James D. Adkins* and *Richard J. Garcia*), for defendant Summit Township.

CAVANAGH, J. Louis Allen, Jr., drowned in or near the public swimming area at Vandercook County Park on Vandercook Lake. Near two buoys marking the swimming area there was a drop-off in the lake bottom. Divers retrieved the decedent's body in about fifteen feet of water several yards past the buoys.

Plaintiff, the personal representative of decedent's estate, alleges that defendant Jackson County, the owner of the park, and defendant Summit Township, the park's operator, acted wilfully and wantonly by creating and setting aside a swimming area containing a dangerous drop-off without proper warnings. Defendants sought summary judgment on the basis of governmental immunity.[1]

The Court of Appeals ruled that because defendants had not complied with the buoy application, inspection, permit, and placement requirements of § 141 of the Marine Safety Act, defendants' operation of the swimming beach was prohibited by § 192 of the Marine Safety Act and was therefore an ultra vires act outside the protection of the

[1] Defendants also moved for summary judgment under the recreational use statute, MCL 300.201; MSA 13.1485. After the trial court ruled that the recreational use statute applied, plaintiff's other claims alleging negligence, nuisance, intentional nuisance, and gross negligence were dismissed with prejudice pursuant to stipulation. On appeal, this Court examines only the immunity issue as it affects plaintiff's remaining claim for wilful and wanton misconduct.

governmental immunity act. *Richardson v Jackson Co,* 159 Mich App 766, 772-773; 407 NW2d 74 (1987). We reverse.

I

Governmental agencies are immune from tort liability for injuries arising out of the agency's "exercise or discharge of a governmental function." MCL 691.1407; MSA 3.996(107). In *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 591; 363 NW2d 641 (1984), we held that a "[g]overnmental function" is "any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." Conversely, governmental agencies are not entitled to immunity under the act for injuries arising out of ultra vires activity, defined as activity *not* expressly or impliedly mandated or authorized by law. *Id.* at 620. In this case, we are asked to clarify how the *Ross* governmental function test[2] applies to an activity authorized generally by one statute, yet regulated by another.

Defendants are authorized to operate recreational facilities such as this public beach by § 1 of 1917 PA 156, which provides:

> Any city, village, county or township may operate a system of public recreation and playgrounds; acquire, equip and maintain land, buildings or other recreational facilities; employ a superintendent of recreation and assistants; vote and expend funds for the operation of such system.[3]

---

[2] In 1986, the Legislature adopted the *Ross* definition of governmental function. 1986 PA 175, MCL 691.1401(f); MSA 3.996(101)(f).

[3] MCL 123.51; MSA 5.2421. For other provisions expressly or impliedly granting authority to counties and townships to operate public parks and bathing beaches, see MCL 46.358; MSA 5.570(108) (county parks commission may acquire real property for public parks, play-

The Marine Safety Act[4] later regulated this authorized activity. Section 192 of that act provides:

> The owner or person[5] in charge of a bathing beach maintained primarily for public usage shall not knowingly permit a person to bathe or swim from the bathing beach unless buoys are established in accordance with § 141, outlining a safe bathing or swimming area. [MCL 281.1192(1); MSA 18.1287(192)(1).]

Section 141 provides in part:

> The department may authorize, through the issuance of revocable permits, the placing of buoys or beacons in the waters of this state to mark obstruction to navigation, to designate bathing areas, to designate vessel anchorages, or for any other purpose if it will promote safety or navigation. Any person who desires to place buoys or beacons in the waters of this state, without ex-

---

grounds and recreational centers); MCL 46.361; MSA 5.570(111) (county or regional parks commission may operate park and recreational places and facilities); MCL 123.61; MSA 5.2431 (county boards of supervisors empowered to purchase or acquire real estate for purposes of public parks); MCL 123.66; MSA 5.2436 (a county board of park trustees shall have the care and control of such park property and may make reasonable rules and regulations and enforce them when made respecting the use by the public of park property); MCL 41.421; MSA 5.2441 (a township may acquire real estate for a public park, resort, bathing beach or other place of recreation, township supervisors shall comprise the board of commissioners for the control of such a park); MCL 41.422; MSA 5.2442 (a board of commissioners shall have power to adopt rules and regulations for the use and maintenance of such places of recreation); MCL 42.14; MSA 5.46(14) (a charter township shall have power to acquire property for public purposes and to maintain and operate public buildings, parks, and facilities needed in the performance of its powers); MCL 41.442; MSA 5.272 (a township park commission shall have authority to acquire, maintain, manage, and control township parks and places of recreation, including bathing beaches); MCL 45.515(d); MSA 5.302(15)(d) (a county charter may provide for the establishment of parks).

4 MCL 281.1001 *et seq.*; MSA 18.1287 *et seq.*

5 "Person" includes a governmental entity. MCL 281.1006(e); MSA 18.1287(6)(e).

pense to the state, shall make application to the department in such form and containing such information as the department may require. Buoys or beacons, except for mooring buoys, shall not be placed in the waters of this state unless authorized by the department in writing. When authorization has been granted, the buoys or beacons shall be placed only in accordance with the terms of the permit and shall be deemed lawfully placed. If buoys or beacons are placed in the waters of this state without a permit having been issued, the department may order their removal. If, in the judgment of the department, buoys or beacons authorized by it are found to be improperly placed or that the reason for their placement no longer exists or that the buoys or beacons do not conform to the uniform system of marking established by state regulation, the department may revoke the permit authorizing their placement and may order their removal. . . . If the person fails to remove the buoys or beacons within the specified time, the department may cause their removal, and the cost and expense of the removal shall be charged against the person authorized to place the buoys or beacons or, where authorization has not been granted, the person placing such buoys or beacons and shall be recoverable through any court of competent jurisdiction. [MCL 281.1141; MSA 18.1287(141).]

The Courts below erroneously assumed that by enacting § 192 of the Marine Safety Act, the Legislature not only intended to impose a regulatory duty on the operation of public beaches, but also intended to condition all authority to engage in that activity upon compliance with that duty. Nothing in § 192 or § 141 suggests that the Marine Safety Act's requirements modify the grant of authority found in 1917 PA 156. There is no evidence that the Legislature considered 1917 PA 156 or the other enabling statutes in the drafting or enactment of the Marine Safety Act. Indeed, in

1972 when the Legislature adopted § 192, the Marine Safety Act did not clearly apply to governmental agencies. "Person" was then defined as an "individual, partnership, firm, corporation, association or other entity." 1972 PA 331; 1967 PA 303. It was not until 1974 that the Legislature amended the definition of "person" to include governmental entities. 1974 PA 153.

We might nevertheless presume that after its 1974 amendment, the Legislature intended § 192 to modify the grant of authority provided in 1917 PA 156 if the two statutes are in pari materia. See 2A Sands, Sutherland Statutory Construction (4th ed), § 51.05, pp 499-500. Statutes are in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. *Id.,* § 51.03. The subject of both statutes is the operation of recreation facilities. However, the more important purposes or objectives of the two statutes are quite different.[6] 1917 PA 156 is "AN ACT authorizing cities, villages, counties, townships, and school districts to operate systems of public recreation and playgrounds." The purpose of the Marine Safety Act is essentially to promote the safe use of Michigan's waters.[7] Because the two statutes are not in pari

[6] Characterization of the purpose or object is more important than the characterization of the subject matter in determining this question. *Id.,* § 51.03.

[7] The title of the Marine Safety Act reads:

AN ACT to promote the safe use of the waters of this state; to provide for the taxation and numbering of motorboats and vessels; to provide for rules relative to the operation of vessels and motorboats; the carrying of equipment on such waters and to the use of waters of this state for boating; to promote uniformity of laws relating thereto; to prescribe the duties and responsibilities of owners and operators of vessels and motorboats; to prescribe the powers and duties of certain state departments; to provide for the disposition of revenue; and to provide for penalties.

materia, the rule of the specific and later act controlling the earlier and general act is inapplicable. See Sands, *supra,* § 51.05.

Attributing to the Legislature an intent to withdraw defendants' authority under these circumstances is not necessary to give effect to the language of § 192. Like other regulations,[8] §§ 141 and 192 set forth certain technical requirements. While noncompliance with these technical rules does not revoke the defendants' authority to operate a bathing beach, it does carry penalties. Under § 166 of the Marine Safety Act,[9] violators of the proscription in § 192 may be charged with a misdemeanor. Section 141 provides that the Department of Natural Resources may order the removal of buoys placed without a permit and recover the costs of removal.

The Legislature has granted authority to Jackson County and Summit Township to operate, equip, and maintain this beach as a recreational facility. By regulating how the swimming area must be marked, it did not withdraw that delegation of power.

II

Enabling acts, which grant authority in broad terms, must be distinguished from regulatory statutes. Improper performance of an activity authorized by law is, despite its impropriety, still "authorized" within the meaning of the *Ross* governmental function test. An agency's violation of a regulatory statute that requires the agency to perform an activity in a certain way cannot render the

---

[8] See, e.g., MCL 333.12542; MSA 14.15(12542) ("[t]he owner or person in charge of a public bathing beach shall provide and maintain suitable and adequate safety and rescue equipment"); MCL 333.12541; MSA 14.15(12541) ("person" includes governmental entity).

[9] MCL 281.1166; MSA 18.1287(166).

activity ultra vires, as such a conclusion would swallow the *Ross* rule by merging the concepts of negligence and ultra vires. See *Smith v Dep't of Public Health*, 428 Mich 540, 590, n 10, 611; 410 NW2d 749 (1987) (opinion of Brickley, J.) (the plaintiff alleged transfer contrary to applicable procedures).

In applying the "governmental function" test of the immunity statute, this Court must consider that statute's breadth. The statute extends immunity "to *all* governmental agencies for *all* tort liability *whenever* they are engaged in the exercise or discharge of a governmental function." *Ross*, 420 Mich 618 (emphasis in original). Nothing in the governmental immunity act suggests the Legislature intended to treat the failure to meet a "condition precedent," such as obtaining a license or permit, any differently for immunity purposes than the failure to meet other sorts of regulatory duties.[10] None of the act's four narrowly drawn exceptions single out activity conditioned on permits or licenses for special treatment. Under *Ross*, activities conducted in violation of regulations

---

[10] The dissent maintains permits impose conditions precedent to authority. Divining when a regulatory statute's requirement was intended to be a condition *precedent* to authority as opposed to a mere duty for performance may prove difficult and arbitrary. Under the dissent's analysis, in each case alleging a governmental agency's violation of a statutory duty, the Court must decide whether a given statute's phrasing requires that the duty be met *before* authority to perform that activity arises or whether the statute's language merely regulates *how* the already authorized activity is to be performed. If a court determines that the agency's authority is conditioned by statute on the prior performance of a duty, ruling on the immunity issue would first require fact finding concerning whether or not the duty was performed.

The public acts are replete with regulatory statutes that employ conditional language potentially subject to the dissent's analysis. Even if the dissent's analysis is limited to approval, permit, or license requirements, one missed or mistaken step in obtaining approval for an otherwise authorized activity would subject governmental agencies to suit for any injury arising from the activity so conditioned, no matter how remote the injury is from the approval requirement.

other than approval requirements are as "unauthorized" as activities conducted without proper approval. Licensing is nothing more than an intense form of regulation.

The Legislature did not intend that the term "governmental function" be interpreted so that immunity for activity authorized generally by statute should evaporate upon the failure to perform a regulatory condition contained in another statute. In sum, ultra vires activity is not activity that a governmental agency performs in an unauthorized manner.[11] Instead, it is activity that the governmental agency lacks legal authority to perform in any manner. Defendants did not lack authority to operate[12] this beach.

The judgment of the Court of Appeals is reversed.

RILEY, C.J., and BOYLE and GRIFFIN, JJ., concurred with CAVANAGH, J.

BRICKLEY, J. (*dissenting*). We find it necessary to dissent from the majority's finding that the unmistakable language of § 192, which commands the defendant to "not knowingly permit a person to bathe or swim . . . unless buoys are established in accordance with section 141," MCL 281.1192(1); MSA 18.1287(192)(1), is not a denial of authorization to carry on such activity absent compliance with § 141.

---

[11] Although a governmental agency may not be held liable for negligently performing an authorized activity in a manner prohibited by statute, under the 1986 amendments, a governmental agent may be individually liable if the agent's conduct amounts to gross negligence and is a proximate cause of the injury or damage. MCL 691.1407(2); MSA 3.996(107)(2).

[12] The county defendants contend that § 192 does not apply to them because Jackson County is not an operator of the beach, but only its owner. Due to our resolution of the immunity question, we need not reach this issue.

I

If we meant what we said in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), that unauthorized governmental activity is not immune, and if the Legislature meant what it said in § 192, that the operator should not allow bathing or swimming unless § 141 is complied with, the conclusion that defendants have lost their immunity is unavoidable.

In *Ross, supra,* p 620, we said that in order to qualify as a governmental function, and therefore to be vested with immunity, the governmental activity must be "expressly or impliedly mandated or authorized by constitution, statute, or other law." In other words, a denial of authority is not required in order to negate immunity status; only an absence of authority need be shown. It is therefore all the more remarkable that in this instance, when the Legislature has in such an unambiguous manner prohibited the activity in question, the majority would strive so mightily to conclude that because prohibition is conditional and because it has a regulatory purpose it is not a denial of authority. The majority simply refuses to accept that the Legislature intended what it said and to accept the consequences under *Ross.*

> The Courts below erroneously assumed that by enacting § 192 of the Marine Safety Act, the Legislature not only intended to impose a regulatory duty on the operation of public beaches, but also intended to condition all authority to engage in that activity upon compliance with that duty. Nothing in § 192 or § 141 suggests that the Marine Safety Act's requirements modify the grant of authority found in 1917 PA 156 [the general authority to operate recreational facilities]. [*Ante,* p 383.]

"Nothing," that is, except the words of the statute. The majority further states, "There is no evidence that the Legislature considered 1917 PA 156 or the other enabling statutes in the drafting or enactment of the Marine Safety Act." (*Ante,* p 383.) What possible reason could there be for the Legislature to consider the general enabling legislation that implies the authority to operate a beach when it decides to prohibit the operation of a beach as it has done, and to the extent it has done it, in the Marine Safety Act? Section 192 certainly suggests that the Legislature knew that there were beaches that were being lawfully operated; otherwise, why would it prohibit such operation under the conditions provided for in the act?

The majority then concludes that the general enabling statute and the Marine Safety Act are not in pari materia. "[T]he rule of the specific and later act controlling the earlier and general act is inapplicable." (*Ante,* p 385.)

This established rule could, of course, be overlooked if there were ambiguity or doubt about what the Legislature intended in adopting § 192. There is no such ambiguity or such doubt here about the unmistakably clear language of § 192. The majority, try as it might, cannot convincingly say that a statute that states that the defendants "shall not knowingly permit a person to bathe or swim" does not interfere with authority to permit a person to bathe or swim from a bathing beach. This rule of construction, found "inapplicable" by the majority, embodies the sound recognition that it is often necessary for additional legislation to take into account the specific nature of the subject matter being addressed. While broad municipal authority existed to operate parks, the Legislature's preference for uniform statewide marking and safety standards relating to water activities is

reflected in the narrower Marine Safety Act. We thus agree with the plaintiff's observation that authorization "to engage in marine activities is addressed and restricted in the narrower statute in a way which could not be done in a broad statute."

Part and parcel of the majority's view is the ironic notion that in *Ross,* which embodies a monumental effort *to clarify* the then-confused state of the law regarding the meaning of "governmental function," we employed the "authority" concept as a mere term of art whose vague legal meaning required exploration in future cases rather than as a simple, unambiguous term whose everyday meaning is readily understood. We can only conclude that the result of today's decision interprets this "term of art" to provide that activities for which authority is partially, temporarily, or conditionally denied, will still enjoy immunity if it can be shown that authority is intended to be restored upon meeting the temporal or conditional requirements specified in the denial of authority. The majority applies this gloss to *Ross* without any suggestion as to why it is necessary to distinguish between the two kinds of ultra vires activity.

Only in conclusory fashion does the majority say, "Enabling acts, which grant authority in broad terms, must be distinguished from regulatory statutes." (*Ante,* p 385.) The majority supports this conclusion with an obviously accurate statement, but one which does not describe what the Legislature did in this instance.

> Improper performance of an activity authorized by law is, despite its impropriety, still "authorized" within the meaning of the *Ross* governmental function test. An agency's violation of a regulatory statute that requires the agency to perform

an activity in a certain way cannot render the activity ultra vires, as such a conclusion would swallow the *Ross* rule by merging the concepts of negligence and ultra vires. [*Ante,* pp 385–386.]

Of course there is no reason why noncompliance with a regulatory statute would necessarily deprive a governmental entity of the authority to engage in the activity. What the majority avoids, however, is the fact that on this occasion the Legislature chose not just to mandate compliance with § 192, not just to provide penalties for failing to observe it, but also to prohibit absolutely the carrying on of the activity absent compliance with the statute. There is simply no reason to "merg[e] the concepts of negligence and ultra vires." There is only a need to read the obvious meaning of this statute in which the Legislature clearly intended to give the operators of public beaches an opportunity to choose between complying with the Marine Safety Act or interrupting the operation of the beach.

Finally, the majority states in a footnote (*ante,* p 386, n 10):

> The public acts are replete with regulatory statutes that employ conditional language potentially subject to the dissent's analysis. Even if the dissent's analysis is limited to approval, permit, or license requirements, one missed or mistaken step in obtaining approval for an otherwise authorized activity would subject governmental agencies to suit for any injury arising from the activity so conditioned, no matter how remote the injury is from the approval requirement.

This is the first suggestion, either in *Ross* or since *Ross,* that the rule that unauthorized activity does not amount to a governmental function was

based on the assumption that absence of authority would not occur often, that liability should be limited to the purpose of the absence of authority rather than to the extent of the unauthorized activity, or that authority to engage in an activity should not be denied if the statute affecting the invocation of authority contains conditions which make compliance difficult.

II

We have found no authority, nor can we envision any rationale, which would prevent the Legislature from conditioning the right to engage in a given activity on obtaining and complying with a regulatory permit. As we stated in *Ross,* authorization to engage in a given activity may be derived from the constitution or law; it is indisputable that authority given by statute can be taken away by statute. We therefore agree with the Court of Appeals that the conceded failure of the defendants to satisfy the conditions precedent embodied in §§ 141 and 192 rendered the operation of the swimming beach an unauthorized governmental activity.

While it is not necessary for us to base our decision on other considerations, we note that even if § 192 did not contain language of prohibition, the mere fact that the Legislature has in effect required a permit to be obtained before a swimming area may be opened to the public supports the same conclusion. It is undeniable that the Legislature enjoys plenary power to control the existence and extent of municipal powers. The well-settled, general rule of the legislative prerogative has been neatly summarized by the United States Supreme Court:

A municipality is merely a department of the

State, and the *State may withhold, grant or withdraw* powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to the sovereign will. [*City of Trenton v New Jersey,* 262 US 182, 187; 43 S Ct 534; 67 L Ed 937 (1923). Emphasis added.][1]

According to the Administrative Procedures Act of 1969, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, a permit is a type of license. MCL 24.205; MSA 3.560(105). "A 'license' is permission by competent authority to do an act which, without such permission, would be illegal." *Westland Convalescent Center v Blue Cross & Blue Shield of Michigan,* 414 Mich 247, 272; 324 NW2d 851 (1982) (citations omitted). The police power of the state, the plenary power of the Legislature over municipal activities which are of statewide concern, and the conditioning of permission to conduct an activity on compliance with licensure requirements all are called into play in the instant case.

> A state's police power with regard to the protection of health, morals, and welfare of the public includes the right to regulate, *by requiring a license as a prerequisite to the carrying on of certain activities* . . . . [51 Am Jur 2d, Licenses and Permits, § 14, p 19. Emphasis added.]

In summary, the statute has a dual purpose: to require a permit for placement of buoys before public swimming is allowed, and to prohibit the activity of operating a swimming area where there is no permit. Focusing our attention, as we must,

---

[1] See also *Detroit v AASER & MCE of A,* 332 Mich 237, 253; 51 NW2d 228 (1952) ("The city of Detroit is merely 1 of the State's governmental agencies; and, subject to constitutional provisions, the State may limit or restrict the powers of such governmental agencies").

on the latter, we agree with the Court of Appeals that the act's statutory scheme expressly withdraws the previous, implied grant of authority to operate a swimming facility contained in MCL 123.51; MSA 5.2421. Thus, we conclude that the activity involved (the operation of a swimming area) was not authorized and, therefore, that liability for the alleged tort arising out of the activity (the drowning of the decedent resulting from the failure to warn him adequately of dangerous conditions in the lake) is not barred by governmental immunity.

### III

In view of the decision of the majority to consider the operation of the beach to be a governmental function, it is not necessary for us to address the question of the liability of the county defendants.

We would affirm the decision of the Court of Appeals.

LEVIN and ARCHER, JJ., concurred with BRICKLEY, J.