# LYDIA SELLIN v. CITY OF DULUTH.

80 N. W. (2d) 67.

December 14, 1956—No. 36,811.

*Harry E. Weinberg,* City Attorney, and *Richard L. Bye* and *Thomas J. Bujold,* Assistant City Attorneys, for appellant.

*Gerald W. Heaney* and *Lewis, Hammer, Heaney, Weyl & Halverson,* for respondent.

FRANK T. GALLAGHER, JUDGE.

Appeal from an order of the district court denying a motion for a new trial. This case arose out of a discharge of plaintiff, Lydia Sellin, by the defendant, city of Duluth, a municipal corporation.

It appears from the record that due to a shortage of funds the city council of Duluth decided to reduce the number of employees working for the city. It was further decided that the city should cease operating the Moore Welfare Building. Prior to the time the plaintiff was discharged, she had been employed as an elevator operator in the Moore Welfare Building. The city had only one other elevator operator, who worked in the City Hall. This second operator had been hired by the city subsequent to the time it had employed the plaintiff.

At the times involved herein Duluth Ordinance No. 6619, § 131, as amended, provided, so far as is pertinent to this case, that employees within the same department or organizational unit should be laid off in reverse order of their seniority. However, all employees of the city in the custodial series were to be considered to be within a single organizational unit.

On January 12, 1954, the plaintiff received notice that her employment would be terminated, and on March 31, 1954, she was laid off. The record indicates that subsequent to January 12, 1954, the plaintiff protested her layoff to the civil service board. On March 5 and March 30, she requested a hearing before the civil service commission. It further appears from the record that a hearing was held on April 21, 1954, which we will refer to hereafter.

Following this date the plaintiff commenced an action against the city of Duluth in the district court. In her complaint the plaintiff

alleged in part that she had been laid off because of lack of work; that the city ordinances contained what are commonly referred to as civil service rules of the city of Duluth; that a hearing before the civil service commission on plaintiff's layoff was held; that subsequently the executive secretary of the civil service board advised her that her layoff would continue; and that her layoff was improper, discriminatory, and arbitrary conduct by the executive secretary of the civil service board. The plaintiff then demanded reinstatement in her employment without loss of seniority and with full pay for the time she had been unjustly laid off in violation of said civil service rules.

The case then came on for trial, and over the objection of the defendant the court tried the case de novo without regard to the proceedings before the civil service board. At the conclusion of the trial, the court found as facts in part the following:

That the plaintiff was employed as an elevator operator by the city of Duluth and assigned to the Moore Welfare Building; that this employment was in the classified service under the civil service board of Duluth; that she had been laid off on March 31, 1954, because of lack of work; that the city employed only two elevator operators and the operator assigned to the City Hall had less seniority or length of service than the plaintiff and had not been laid off; that both operators were under the supervision of the city building custodian and that both worked closely in conjunction with the janitors in the Moore Welfare Building and the City Hall. The court also found that certain service reports were made out on each operator by the same person; that both were appointed by the same authority; that both took the same civil service examination; that all of the employees except the plaintiff were transferred to the City Hall and integrated into the seniority lists of other employees doing the same work. The court then found that elevator operators are commonly recognized as custodial employees.

The court concluded as a matter of law that elevator operators employed by the city of Duluth, including plaintiff, are within that group of employees included in the "Custodial" category of the civil

service rules; that plaintiff as an elevator operator in the Moore Welfare Building was in the same "organizational unit" as the elevator operator in the City Hall, within the meaning of civil service rules; and that the layoff of the plaintiff was illegal, improper, and contrary to law and to the provisions of the civil service rules governing the employment of the plaintiff since the layoff was not in the reverse order of seniority.

After that determination, the city of Duluth appealed from an order denying its motion for a new trial. The city, among other things, assigns as error that the trial court erred in making independent findings of fact and conclusions of law; and in denying defendant's motion for amended findings and conclusions or for a new trial based on the contention of defendant that the court lacked jurisdiction to make independent findings and conclusions, thereby substituting its judgment for that of the administrative agency. It is the contention of the city that Minn. Const. art. 3, § 1, limited the jurisdiction of the district court in this case to a determination of whether there was evidence to sustain the layoff, and whether the layoff was clearly the result of arbitrary, fraudulent, capricious, or unreasonable administrative action. Minn. Const. art. 3, § 1, provides as follows:

"The powers of government shall be divided into three distinct departments—legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution."

It seems clear at the outset that, if the court's action in this case constituted the exercise of a power properly belonging to a branch or department of government other than the judicial, the city is correct in its position before this court.

It is of course difficult to separate exactly the functions of the three branches of our government. The precise line of cleavage between judicial and ministerial functions may never be definitely determined. Foreman v. Board of Co. Commrs. 64 Minn. 371, 67 N. W. 207. It is apparent that acts may be of a judicial nature, and yet not

strictly judicial. State ex rel. Young v. Brill, 100 Minn. 499, 111 N. W. 294, 639; Home Ins. Co. v. Flint, 13 Minn. 228 (244). Thus it may be stated that a particular act may contain certain elements of what is ordinarily considered a judicial function and yet constitute primarily a function which may not be exercised by the judicial branch of the government.

In State ex rel. Hart v. Common Council, 53 Minn. 238, 55 N. W. 118, it was contended that the proceedings of the common council in removing two members of the Board of Fire Commissioners could not be reviewed on certiorari because the decision was purely administrative and quasi-political. In that case our court held that the power of the council was not judicial in the sense that it could only be conferred upon the courts but that its acts were quasi-judicial and therefore could be reviewed on certiorari. The court recognized the fact that, while in the exercise of its power the proceedings of an administrative body are quasi-judicial and therefore reviewable by the courts, these bodies are not courts but essentially legislative and administrative bodies.

As a further indication that a particular act may be administrative for the purpose of deciding which branch of the government it comes under but judicial for the purpose of allowing review by certiorari is the case of In re Fredericks, 285 Mich. 262, 280 N. W. 464, 125 A. L. R. 259. In that case the Michigan court, citing the Hart case, *supra*, stated that the act of removing an employee of the fire department for cause is primarily administrative and, although judicial in a sense, is not an act of such a nature that it requires performance by the judicial branch of the government *or permits an appeal thereto*. The court went on to state (285 Mich. 266, 280 N. W. 465):

"A decision of the civil service commission upon a hearing to remove for cause, not being the result of judicial action, but being at the most a quasi-judicial act of an administrative tribunal, is not subject to review by the courts on appeal and an attempt by the legislature to create a right of appeal would fail as an unconstitutional endeavor to foist nonjudicial functions upon the courts."

The court further explained that creating a right of appeal would only be unconstitutional if by appeal a de novo review was intended.

We therefore conclude that the removal of a municipal employee by an administrative agency is an administrative function although performed in a judicial manner. Hughes v. Dept. of Public Safety, 200 Minn. 16, 273 N. W. 618; State ex rel. Hart v. Common Council, *supra;* In re Fredericks, *supra;* City of Aurora v. Schoeberlein, 230 Ill. 496, 82 N. E. 860.

The principle that a court may not substitute its judgment for that of an administrative agency if the administrative function is nonjudicial is well established in this state. In Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713, involving a statute providing for an appeal from the Railroad and Warehouse Commission to the district court, our court stated that, if the legislature intended to provide that the court should put itself in the place of the commission, try the matter de novo, and determine what were reasonable rates, without regard to the findings of the commission, such intent could not be carried out because a statute which so provided would be unconstitutional. It further held that the fixing of rates is a legislative or administrative act, not a judicial one, and that the performance of such duties could not, under our constitution, be imposed on the judiciary. It therefore follows that a court may not, in an action for salary, take jurisdiction to perform a nonjudicial function any more than the legislature may impose such a function on the courts by providing for an appeal de novo.

In State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544, a situation was presented involving the discharge of certain teachers by the Board of Education. In that case our court pointed out that the school board is a part of the executive department but in carrying out its duties it exercises administrative, legislative, as well as quasi-judicial functions. The court stated that the field of judicial inquiry is not enlarged in the case of discharge of teachers for cause, which is essentially an executive function, by the fact that a legislative act requires such court "trappings" as formal charges, notice, and hearing; that complete jurisdiction cannot,

either directly or indirectly, be conferred upon the courts in view of the constitutional division of the powers of government. The Ging case also explained what a court may properly do with respect to the decision of an administrative agency. It set out that jurisdiction of the courts is necessarily confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and, as to merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it. It said that a court cannot put itself in the place of the board, try the matter de novo, and substitute its findings for those of the board.

The plaintiff, however, contends that all that is involved in the case at bar is a question of law, namely, that of interpreting the meaning of the law as set forth in the civil service rules. This was also the position of the trial court as stated in its memorandum.

In many cases it is difficult to determine just what is a question of law and what is a question of fact. Often the same questions have both factual and legal attributes. Such questions have been termed "mixed" questions of fact and law. This problem has arisen quite often in the field of administrative law in connection with the application of statutory language to a particular state of facts. See, 58 Harv. L. Rev. 70, 93, 94.

The findings of fact and conclusions of law of the trial court in the instant case have been set forth above. It is obvious that the trial court here interpreted the law in question to mean that, under the facts as it found them, the plaintiff and the other elevator operator who was retained were in the same organizational unit and both came within the classification of custodial workers. It is equally clear that such an interpretation could not have been made independently of the facts. The finding of these facts is a function which may not be performed by the court in the first instance as that is a function which must be performed by the administrative body. The function of the court, among other things, is limited to reviewing those findings of fact and from that point determining whether the

administrative body had operated under an erroneous theory of law. Further, this must be done in the case at bar by way of a writ of certiorari from the decision of the civil service board. See, State ex rel. Ging v. Board of Education, *supra*.

The plaintiff also contends that previous cases uphold her right to have an original determination of her case made by the courts. One of the cases cited by the plaintiff is Markus v. City of Duluth, 138 Minn. 225, 164 N. W. 906. In our opinion that case illustrates the opposite of the plaintiff's contention. That case involved the discharge of a building appraiser for the city of Duluth, who had first been dismissed by the city assessor. In a suit for salary it was properly determined that the discharged employee was entitled to salary as only the commission had the power of removal and the city assessor had no authority to dismiss him. It is clear that in such a case court action for salary is proper. The next development in that case was a hearing by the civil service commission which resulted in a formal order of dismissal. The plaintiff then properly went to the district court on a writ of certiorari where the commission was reversed. Following the reversal of the commission on certiorari, the appraiser instituted another suit to recovery salary. In view of the fact that there had been no order of suspension by the commission and the further fact that the district court had reversed on certiorari, it was held that he was entitled to salary. In the case before us the trial court did not award salary to the plaintiff on the basis that the hearing before the civil service board was improper or that it acted unreasonably, arbitrarily, or capriciously, as might have been the situation had there been a review by certiorari, but rather it made findings of fact necessary to its interpretation of the law, then awarded salary and concluded that the layoff of the plaintiff was contrary to law and to the provisions of the civil service rules of the city of Duluth.

The remaining cases cited by the plaintiff are cases in which a suit has been brought by a public employee to recover salary. However, an examination of those cases reveals none from which the inference could be drawn that an employee of the legislative or executive

branch of the government may have the propriety of his discharge decided de novo by the courts without regard to the administrative agency involved.

While the question of the propriety of the hearings before the civil service board formed no part of the basis for the decision of the trial court, we consider it necessary to comment on this as part of the case. On oral argument the plaintiff's attorney commented on his inability to present evidence at the hearing. We have reviewed the exhibits in this case thoroughly and find that the entire proceedings before the board were very sketchy. Apparently no record of any kind was made of the hearing; further, the board made no findings of fact and from the brief notation made of the hearing it was reluctant to do so. In view of this situation we must point out that the board of its own initiative should now grant a further hearing. At such a hearing an adequate record of the proceedings should be made, and the board should make findings of fact on which it bases its final determination. If this is not done, the plaintiff has the right to go to the district court on a writ of certiorari, where the case may be remanded to the board with directions to find the facts necessary to the board's determination of the case.[1]

Reversed, in accordance with this opinion.

---

[1]See State ex rel. Ging v. Board of Education, 213 Minn. 550, 589, 7 N. W. (2d) 544, 564, where it is pointed out that the district court does not have the power to enter judgment setting aside and vacating the decision of the board but may only reverse and send the case back with directions, for example, to proceed with the correct view of law in mind; to permit additional evidence to be taken; or to make additional findings in accordance with the law. The district court, after reversal, should not proceed to decide the case on its merits but should remand the case to the administrative body for further proceedings in accordance with its decision.