# LOUIS GARAVALIA AND OTHERS v.
# CITY OF STILLWATER AND OTHERS.

168 N. W. (2d) 336.

May 9, 1969—Nos. 40308, 40489.

*Neumeier & Kimmel,* for appellants.

*Firestone, Fink, Krawetz, Miley, Mass & Noonan* and *William W. Fink,* for respondents.

NELSON, JUSTICE.

Plaintiffs, Louis Garavalia, John Zoller, Arnold Peltier, Leonard Schrode, Roy Edstrom, and James Tibbetts, brought this action in the Washington County District Court for a declaratory judgment establishing their status as employees of defendant city of Stillwater; to compel the city and the other defendants, the city administrator, the mayor, and the members of the city council, to reinstate plaintiffs as members of the city's fire department; and to enjoin defendants from appointing other persons to plaintiffs' positions. A temporary restraining order was issued upon the commencement of the action, which the court subsequently vacated upon the ground that under Minn. St. c. 185 it had no jurisdiction to issue such an order prior to hearing testimony in open court.

After trial the court found the following facts: On July 1, 1965, all of the plaintiffs were employees of defendant city's fire department and were directly supervised by its chief, John Lawson, who was by the city charter in charge of the department and answerable to the city council. The council had the right to hire and fire members of the fire department, subject to compliance with the laws of the State of Minnesota.

Plaintiffs Zoller, Peltier, Edstrom, and Tibbetts are war veterans as defined in the Veterans Preference Act and are entitled to the protection of Minn. St. 197.46, which prohibits removal from employment without a hearing. No written charges were made by the city council against these veterans and no hearing was provided in connection with the termination of their employment.

Prior to January 1, 1965, plaintiffs were dissatisfied with their wages and working conditions and voiced their grievances to the fire chief, city administrator, and members of the council without substantial results. A

new pay and working schedule was put into effect for 1965 resulting in little, if any, actual raise in compensation to the plaintiffs, and on December 31, 1964, the fire department employees designated plaintiffs Zoller and Garavalia as their representatives to negotiate a change in working hours and compensation. Thereafter requests for meeting were made, culminating in the appointment of an adjustment panel pursuant to Minn. St. 179.57, which held hearings in May 1965, and on May 17, 1965, made findings as follows:

"There is a lack of communication between the Fire Department and City Administrator. This is caused by the lack of time the City has had an administrator and the briefing the Fire Department receives from the Chief.

"Wage and working conditions proposals of the Fire Department are presented too late in the year to receive the proper consideration in the budget.

"The Police Department is receiving $6,600.00 less per year as a result of the additional monies saved by the City with two fewer policemen on the force."

The panel recommended that meetings be established between elected representatives of the fire department and the city, the number of meetings to be controlled by the importance of the subject matter to be discussed; that fire department budget meetings be conducted before August 1 of each year or as soon thereafter as practical; that a set of comprehensible work rules be posted in the fire station at all times; that the $6,600 savings to the city be divided on the basis of $30 per month wage increase to the firemen and $40 per month increase to the policemen; and that the representatives of the fire department meet with the public employer as soon as possible to determine whether the city could grant the suggested increase at that time. The council, however, made no move toward acting upon the recommendations, and discussions between the city administrator and plaintiffs Zoller and Garavalia effected no change.

On June 30, 1965, plaintiffs held a meeting at which they expressed their intention to "quit" at 7 p. m., July 1, unless "something was done"

with regard to wages and working conditions, and they so advised a member of the council. However, no action was taken July 1 and in fact plaintiffs worked at a fire that evening. Prior to July 2, plaintiffs had informed the fire chief of their intention to "walk off" their jobs, as a demonstration of their demands, and informed him that they would respond to siren calls. On the morning of July 2, plaintiffs Zoller and Peltier, who were on duty, walked off their jobs about 10:30 a. m. Plaintiff Garavalia was not on duty, being scheduled for report at 8 a. m. on July 3, but was present when the walkout took place and stated that he was through arguing and would stay with the decision to walk off until the employees' demands were met. Garavalia theretofore had advised the city administrator and the fire chief of his intention to walk off the job, and he did not report for work on July 3 or thereafter except to cover or offer to answer fire siren calls.

On July 2, after advice of the "walkout," the city administrator called plaintiff Schrode and asked what his plans were in regard to reporting for work. He was informed by Schrode that "I am definitely with the men." The council thereupon met and authorized the administrator to advise all plaintiffs: "Your employment as a fireman was terminated this morning at 10 a. m. when you informed the City Administrator that you were quitting and left your duties unattended." Such letters were typed and mailed at the end of the day on July 2 and were received by plaintiffs on July 3 or later. For about two months after July 2, some of the plaintiffs did report to the fire station when the fire siren sounded and on one or two occasions actually participated in fire runs. Plaintiffs also contacted the city administrator and council members and requested their jobs back but were refused. New firemen were employed by the city in due course and in the meantime fire protection was also contracted for with neighboring villages.

The court found also that the walkout of all the fire department employees seriously affected the safety of the city, in that no one would be at the station to receive fire and emergency calls, and that the coordinated action of the plaintiffs constituted a strike or walkout in violation of Minn. St. 179.51 and 179.54. It found that both plaintiffs Garavalia and Schrode, who, though they were not on duty on the morning of July 2,

1965, stated without equivocation that they were in accord with the pronounced intention of all the plaintiffs to "walk off the job" and that they were through until their demands were met, had thus joined in and were a part of the concerted, planned action of all the plaintiffs on July 2, 1965; that the discharge of plaintiffs Garavalia and Schrode came as a result of their participation in an unlawful walkout and not as a result of their union membership or their activity in submitting their grievances to the city council or its subordinates; and that by their action they abandoned their employment with the city. The court concluded that plaintiffs Garavalia and Schrode were discharged for reasonable cause and their employment with the city of Stillwater was terminated effective July 2, 1965. It determined, however, that plaintiffs Zoller, Peltier, Edstrom, and Tibbetts "were discharged from their employment without being afforded their statutory right to a hearing and they are therefore entitled to immediate reinstatement with compensation payable from the date of their discharge, subject to any mitigation of damages under principles customarily applied in breach of employment contracts."

In a memorandum accompanying its order for judgment, the trial court commented:

"The Veterans Preference Act controls the order of this Court insofar as it pertains to the plaintiffs who are eligible to protection of M. S. A. 197.46. No hearing was afforded those men before their discharge by letter dated July 2nd, 1965. (Johnson vs. Cohasset, 263 Minn. 425, 116 N. W. 2nd 692).

"Though M. S. A. 179.51 became effective after M. S. A. 197.46, etc., it is not applicable in its effect of termination as to veterans because it does not by its term specifically or expressly supersede M. S. A. 197.46 (see M. S. A. 197.48).

"The Court finds no evidence to justify any conclusion that the plaintiffs 'quit' their jobs in the general meaning of that word. Rather, it was their intention to walk off the job and, in effect, strike in order to force some action by the Council in response to their long and continued complaints with regard to their wages and working conditions. It is unfortunate they took this means to protest, as the law is clear (M. S. A.

179.51) that firemen cannot strike or walk out. The law is equally clear that one who violates this law abandons or terminates his employment."

Apparently pursuant to the trial court's statement that the Veterans Preference Act controlled the order entered by the court insofar as it pertained to the plaintiffs who were veterans, in March 1966 a hearing on charges these plaintiffs had violated §§ 179.51 to 179.54 was conducted before a statutory board of three members appointed as specified in § 197.46. This panel found:

"That John Zoller, Arnold Peltier, Roy Edstrom and James Tibbetts abstained in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing or coercing a change in their conditions or compensation.

"That their coordinated action constituted a walk out in violation of M. S. A. 179.51 and 179.54.

"That participation in such unlawful acts constituted misconduct.

\* \* \* \* \*

"That the charges of misconduct made by the City against the said John Zoller, Arnold Peltier, Roy Edstrom, and James Tibbetts are true."

In a memorandum incorporated in its decision, the board added:

"The Board believes from the testimony produced at the hearing that the said Firemen, John Zoller, Arnold Peltier, Roy Edstrom, and James Tibbetts, were conscientious, competent employees of the City of Stillwater and that they had a legitimate grievance with regard to compensation and working conditions. The Board further believes that the situation in the Fire Department merited more consideration than it received from the City Council. And it further believes that other and less drastic methods were available for dealing with the emergency. *But it cannot condone the breaking of the laws of the State of Minnesota by the firemen in an attempt to obtain redress of their grievances.*

"The Board feels, in view of the long and competent service of the men involved, that they should be rehired by the Fire Department of the City of Stillwater as and when openings occur." (Italics supplied.)

Following the board's decision, the veteran-plaintiffs petitioned for and were granted a writ of certiorari from the District Court of Washington County on April 15, 1966.[1] That matter is still pending.

Defendants have appealed from the judgment entered pursuant to the court's findings, and plaintiffs Garavalia and Schrode have appealed from an order denying their motion for a new trial.

As stated by the trial court in its memorandum, firemen, who are public employees, cannot strike or walk out. Minn. St. 179.50 to 179.58 constitutes the Public Employees Labor Relations Act. Section 179.51 reads as follows:

"No person holding a position by appointment or employment in the government of the State of Minnesota, *or in the government of any one or more of the political subdivisions thereof,* * * * hereinafter called a 'public employee' shall strike, or participate in a strike. As used in sections 179.51 to 179.58 *the word 'strike' shall mean the failure to report for duty, the wilful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing*

---

[1] With respect to the scope of review afforded in such proceedings, see Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67, where we said that the removal of a municipal employee by an administrative agency is an administrative function, although performed in a judicial manner, and that a court may not substitute its judgment for that of an administrative agency if the administrative function is nonjudicial. We also said (248 Minn. 333, 80 N. W. [2d] 68):

"In reviewing the acts of an administrative agency performing nonjudicial functions the court's jurisdiction is confined to questions affecting the jurisdiction of the board, the regularity of its proceedings, and whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it. A court may not put itself in the place of a board, try the matter de novo, and substitute its findings for those of the board.

"* * * [T]he district court in the case at bar was without jurisdiction to make findings of fact de novo without regard to the proceedings of the civil service board, and the district court's function in this case must be limited to a review of the proceedings before the civil service board on a writ of certiorari to that court."

*or coercing a change in the conditions or compensation or the rights, privileges or obligations of employment."* (Italics supplied.)

It appears that policemen and firemen of cities of the second class are included within the meaning of the term "public employee" as used in the foregoing section. See, Opinion Attorney General, No. 270-D, Dec. 16, 1958.

Section 179.54 provides:

"Notwithstanding any other provision of law, any public employee who violates the provisions of sections 179.51 to 179.58 *shall thereby abandon and terminate his appointment or employment* and shall no longer hold such position, or be entitled to any of the rights or emoluments thereof, except if appointed or reappointed as hereinafter provided." (Italics supplied.)

Section 179.55 provides how reemployment of striking employees may take place. Section 179.56 provides that an employee shall be entitled to establish that he did not violate the act:

"Any public employee, upon request, shall be entitled, as hereinafter provided, to establish that he did not violate the provisions of sections 179.51 to 179.58. *Such request must be filed in writing with the officer or body having the power to remove such employee, within ten days after regular compensation of such employee has ceased, whereupon such officer, or body, shall within ten days commence a proceeding at which such person shall be entitled to be heard for the purpose of determining whether the provisions of sections 179.51 to 179.58 have been violated by such public employee,* and if there be laws and regulations establishing proceedings to remove such public employee, the hearing shall be conducted in accordance therewith. Such proceedings shall be undertaken without unnecessary delay." (Italics supplied.)

Section 179.57 provides for the setting up of an adjustment panel of three members to settle controversies involving wages, hours, or other terms and conditions of employment. The attorney general has expressed the view that the provisions in § 179.57 requiring the setting up of an ad-

justment panel are mandatory. Opinion Attorney General, No. 270-D, April 14, 1954.

Section 179.571 provides for independent review:

"It shall be public policy of the state of Minnesota that every public employee should be provided with the right of independent review, by a disinterested person or agency, of any grievance arising out of the interpretation of or adherence to terms and conditions of employment. When such review is not provided under statutory, charter, or ordinance provisions for a civil service or merit system, the governmental agency may provide for such review consistent with the provisions of law or charter. If no other procedure exists for the independent review of such grievances, the provisions of section 179.57 shall be available to the public employee upon request to the governmental agency."

Section 179.58 provides:

"Minnesota Statutes 1949, Sections 185.07 to 185.18, [which specify the conditions under which courts may issue restraining orders or grant injunctions in cases involving labor disputes] *shall not be held to apply to any governmental employee or any other public official affected by sections 179.51 to 179.58.*" (Italics supplied.)

Thus, this section, as well as § 185.19, bars the plaintiffs in this case from seeking injunctive relief.

The record here presents the issue of whether the requirement of § 197.46, commonly known as the Veterans Preference Act, that an honorably discharged veteran shall not be removed from a position of public employment without a hearing, upon due notice, upon stated charges in writing, applies to a veteran who was engaged in a strike or walkout in violation of § 179.51 and under § 179.54 would otherwise thereby have abandoned and terminated his appointment or employment. We think the court improperly found that the veteran-plaintiffs were discharged, when in fact they abandoned and terminated their own employment by their own acts. Therefore, the requirement of § 197.46 of hearing before *removal* has no application in this situation since that act controls the city's power to terminate the veteran's employment, and in this case the veteran-plaintiffs' employment was terminated by their own act and by opera-

tion of law. The trial court found as a fact that "the coordinated action of the plaintiffs constituted a strike or walk out in violation of M. S. A. 179.51 and 179.54." In the face of that finding, the court proceeded as if these statutes stated that such actions were proper grounds for discharge of the employees by the city and as if the city had availed itself of this ground and discharged the veteran-plaintiffs, even though the court in reference to plaintiffs Garavalia and Schrode found that "by their action they abandoned their employment with the City of Stillwater." The same is true of the other plaintiffs. Minn. St. 179.54 clearly provides that "any public employee who violates the provisions of sections 179.51 to 179.58 shall thereby abandon and terminate his appointment or employment * * *." Under the terms of the statute, no authority to discharge is given the city if a violation occurs. The statute, instead of establishing grounds for discharge of municipal employees by the city, imposes restrictions upon the city's rights to contract with its employees. The contracts of all public employers with their employees are subject to these restrictions. See, City of Detroit v. Division 26 of Amalgamated Assn. 332 Mich. 237, 51 N. W. (2d) 228.

It is thus clear that when any municipal employee violates the provisions of §§ 179.51 to 179.58, his employment with the city is automatically terminated without any action by or on behalf of the city. Furthermore, the city under the terms of § 179.54 has no alternative except to consider such employment terminated, as is further illustrated by § 179.55 which places restrictions upon the right of a public employer to reemploy an employee who has violated §§ 179.51 to 179.58. Thus, the specific intent which plaintiffs may have entertained in this case becomes immaterial since the only material fact is that they violated the statute, which caused the termination of their employment to arise by operation of law due to their own conduct. The requirement of the Veterans Preference Act that there must be a hearing before removal of an employee entitled to the protection of that act has no application in this situation, since that statute controls the city's power to terminate the veteran's employment and, as stated, in this case the veteran-plaintiffs' employment was terminated by operation of law because of their own acts.

In Donevero v. Jersey City Incinerator Authority, 75 N. J. Super. 217,

182 A. (2d) 596, plaintiffs were honorably discharged veterans employed by defendant Authority, an agency of the city created to perform a public duty, namely, to provide for collection and disposal of garbage. One of the issues was whether the plaintiffs had a right to strike and picket against the Authority. The plaintiffs contended that if they did participate in an illegal strike they could not be removed from their employment except for good cause after a hearing. The court there said that while the New Jersey courts had long recognized the importance of the Veterans Tenure Act of that state and had accorded to veterans within its purview the full measure of protection which the legislature intended to give to them, these valuable and preferential individual rights could not be accorded recognition when the veteran's conduct was contrary to public policy. The court further stated (75 N. J. Super. 226, 182 A. [2d] 601):

"* * * The plaintiffs were not discharged or removed by the Authority. It was plaintiffs' voluntary act which terminated their employment. They were never lulled into a false belief that their positions would be available regardless of when they decided to return to work. It is axiomatic that a person cannot benefit from his own wrongful conduct. The Authority's function is admittedly public in nature and in furtherance of the municipal welfare. To justify plaintiffs' conduct in engaging in an unlawful strike because of their disappointment or disallusionment in not obtaining an oral hearing with the Authority would be to put a premium on resort to illegal practices instead of legal remedies and would subvert the principle of law and order.

\* \* \* \* \*

"* * * By their conduct, plaintiffs removed themselves from the protective limits of the Veteran's Tenure Act."

This court in State ex rel. Boyd v. Matson, 155 Minn. 137, 141, 193 N. W. 30, 32, said:

"Section 2 of the act [L. 1919, c. 192] provides that no honorably discharged soldier, sailor or marine holding a position in the public service shall be removed therefrom except for incompetency or misconduct shown after a hearing on stated charges. The purpose of this section is to take

away from the appointing officials the arbitrary power, ordinarily possessed, to remove such appointees at pleasure; and to restrict their power of removal to the making of removals for cause."

We think it clear then that to hold the provisions of the Veterans Preference Act inapplicable to the present situation carries out the intent of the legislature with respect to both statutes. It was the apparent intent of §§ 179.51 to 179.58 to impose upon public employers restrictions upon their right to contract. The fact that § 179.54 places the responsibility for termination of employment upon the employee who violates the provisions of §§ 179.51 to 179.58 is further emphasized by § 179.56, under which the employee is permitted, upon a hearing requested by him, "to establish that he did not violate the provisions of Sections 179.51 to 179.58." It appears that under this section the burden of establishing nonviolation is upon the employee rather than upon the employer, as would be the case if the hearing were one to establish grounds for removal by the employer.

Furthermore, § 179.56 provides that a request for such hearing "must be filed in writing with the officer or body having the power to remove such employee * * *." It is significant of the legislature's intent in this act that it does not refer to the officer or body which removed or discharged such employees. Therefore, it would appear that the purpose of the hearing is not to determine whether or not the employee should be discharged but to determine whether the provisions of §§ 179.51 to 179.58 have been violated. The public employer is given no authority to discharge by §§ 179.51 to 179.58. Thus, since it is the arbitrary abuse of authority to discharge against which the Veterans Preference Act guards, §§ 179.51 to 179.58 and the Veterans Preference Act are not in conflict.

The only opportunity afforded plaintiffs under the Public Employees Labor Relations Act for hearing upon the question of its violation is given by § 179.56, and that hearing must be requested by the employee within 10 days after regular compensation of such employee has ceased. Had the veteran-plaintiffs made such request, they would have, by further provisions of § 179.56, been entitled to a hearing in accordance with the Veterans Preference Act, since this is the law which governs proceedings for

their removal. But there is no allegation nor finding that such request was made, and in its absence it is clear that no hearing is required.

In the instant case the trial court referred to Johnson v. Village of Cohasset, 263 Minn. 425, 116 N. W. (2d) 692, as authority for its conclusion that the veteran-plaintiffs came within the purview of the Veterans Preference Act. The Johnson case dealt with the hearing required by § 197.46 when a veteran-employee in public employment is discharged, so the case is not controlling here.

■ The rule has long been settled in this state that no one is entitled to injunctive protection against the actual or threatened acts of an administrative agency until the prescribed statutory remedy has been exhausted, unless the party seeking injunctive protection can show that the pursuit and exhaustion of such administrative remedy will cause imminent and irreparable harm as distinguished from merely speculative damages based on nothing more than an apprehension that the final outcome of the administrative proceedings will be prejudicial. State ex rel. Sheehan v. District Court, 253 Minn. 462, 93 N. W. (2d) 1. Minnesota cases uniformly hold that an administrative action which has not reached a stage causing irreparable injury cannot be enjoined, even though the anticipated decision of the administrative agency is questioned on constitutional grounds. Injunctive relief cannot be given for what is merely assumed to be a possible result. We think it is thus clear that the district court here could not acquire jurisdiction in the absence of an administrative hearing pursuant to plaintiffs' request under § 179.56. It is clear that plaintiffs knew that the city's position was that they had violated § 179.51. However, they did not request the administrative hearing. Since they failed to seek the hearing and review provided by §§ 179.51 to 179.58, the district court did not acquire jurisdiction over plaintiffs' action. Accordingly, we have no alternative but to remand it for dismissal.

Remanded with directions to enter judgment of dismissal.

ROGOSHESKE, JUSTICE (concurring specially).

I agree that the decision of the trial court under review is a nullity. However, lest the language with reference to all of the plaintiffs that their "em-

ployment was terminated by operation of law because of their own acts" be misinterpreted, I would emphasize that any finding supporting that conclusion made either by the trial court or the Veterans Preference Panel should not be regarded as a judicial or administrative determination that each and every one of plaintiffs violated Minn. St. 179.51 by striking against the city within the meaning of the word "strike" as therein defined. Even though the facts indicate that two of the plaintiffs stopped work while on duty in clear violation of § 179.51, the actions of the others appear to amount to no more than a declared intent to strike, which could not be carried out because of the supervening notice of termination issued by the city manager. I therefore understand and believe that our disposition of this appeal should not be understood to preclude those plaintiffs from litigating the issue of whether or not they in fact engaged in a strike against the city by raising or attempting to raise that issue in any proper administrative or judicial proceeding.

OTIS, JUSTICE (concurring specially).
I join in the concurring opinion of Mr. Justice Rogosheske.