GENERAL DRIVERS, HELPERS, AND TRUCK TERMINAL EMPLOYEES, LOCAL 120, et al., Appellants,

Council 91, American Federation of State, County and Municipal Employees, Intervenor, Appellant,

v.

CITY OF ST. PAUL, Respondent.

No. 47761.

Supreme Court of Minnesota.

Sept. 1, 1978.

Rehearing Denied Nov. 6, 1978.

Robins, Davis & Lyons and Stephen D. Gordon, Bruce A. Finzen, and Ernest Re-veal III, St. Paul, for appellant General Drivers, et al.

Gregg M. Corwin, Golden Valley, for appellant Council 91, et al.

Harriet Lansing, City Atty., Frank E. Villaume III, Asst. City Atty., St. Paul, for respondent.

Heard before PETERSON, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

The issue for decision is whether the Minnesota Public Employment Labor Relations Act (PELRA) permits sympathy strikes by public employees in support of a lawful primary strike by public employees in collective bargaining units of which the sympathy strikers are not members. The issue is solely one of statutory construction. The district court of Ramsey County ruled that such a sympathy strike is prohibited by Minn.St. 179.64, subd. 1 (PELRA), and we are compelled to agree.

■ Employees of the city of St. Paul in two bargaining units of clerical and technical employees, represented by Council 91, American Federation of State, County and Municipal Employees (Council 91), commenced a lawful strike against the city on May 26, 1976. Negotiations for a new agreement were unsuccessful and, pursuant to § 179.69, Council 91 requested binding arbitration. The Bureau of Mediation Services (BMS) then certified that an impasse had been reached. In this situation the city had a choice [1] between agreeing to arbitration or accepting a lawful strike by the two bargaining units represented by Council 91. The city chose not to arbitrate. Employees in the two bargaining units accordingly were, by statute, authorized to and lawfully did picket their place of em-

[1] These clerical and technical employees are classified by statute as "non-essential" employees. It is only where the employees are "essential," and therefore may not strike, that the employer must agree to arbitration. *St. Paul Prof. Employees Assn. v. City of St. Paul*, 303 Minn. 106, 226 N.W.2d 311 (1975).

ployment with banners publicizing the strike.

Employees of the city of St. Paul in other bargaining units, represented by several other labor unions, plaintiffs in this matter, gave notice of their intention to strike in sympathy by refusing to cross the picket lines of the striking employees and to report for work. The city responded with notice to plaintiffs' members that only Council 91 employees in the two bargaining units could lawfully strike and that their own refusal to work would subject them to discipline, including suspension or termination of employment. Plaintiffs promptly initiated an action for declaratory judgment and an injunction against disciplinary action by the city.[2]

The threshold premise is that under both state and Federal law public employees do not possess all of the rights of nonpublic employees. Permissible practices which are commonplace in the private sector of employment are not so in the public sector unless permitted by statute. President Franklin D. Roosevelt, under whose administration the original Wagner Act was enacted for the benefit of private employees, said of public employees:

> " * * * [A] strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those who have sworn to support it is unthinkable and intolerable."[3]

To this day, the National Labor Relations Act applies only to private sector employees, 29 U.S.C.A. § 152 (2 and 3), and sympathy strikes by Federal employees are prohibited. Exec. Order No. 11491, 5 C.F.R. 2400.1 (Supp.1975), 5 U.S.C.A. §§ 7301, 7311. Under common law, a strike by public employees for any purpose was unlawful. *Head v. Special School Dist. No. 1*, 288 Minn. 496, 182 N.W.2d 887 (1970), certiorari denied, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 186 (1971).

Minnesota has by legislative enactment occupied a middle ground in conferring upon public employees some, but not all, rights enjoyed by nonpublic employees. The Public Employment Labor Relations Act, when first enacted in 1971, granted public employees the right to meet and confer with their public employer but continued to withhold from them any right to strike. Ex.Sess.L.1971, c. 33.[4] Minn.St. 179.63, subd. 12, defines a "strike" as follows:

> " 'Strike' means concerted action in failing to report for duty, the willful absence from one's position, the stoppage of work, slowdown, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment for the purposes of inducing, influencing or coercing a change in the conditions or compensation or the rights, privileges, or obligations of employment."

This definition is supplemented by § 179.64, subd. 3, which provides:

> " * * * [A]n employee who is absent from any portion of his work assignment without permission, or who abstains wholly or in part from the full performance of his duties without permission of

---

**2.** Some of the plaintiffs' members refused to cross the picket lines, but others did not because of the city's threat of disciplinary action. The record does not disclose whether any of the former were in fact disciplined.

**3.** Quoted in *Norwalk Teachers' Assn. v. Board of Education*, 138 Conn. 269, 274, 83 A.2d 482, 484, 31 A.L.R.2d 1133, 1138 (1951), and *Head v. Special School Dist. No. 1*, 288 Minn. 496, 508, 182 N.W.2d 887, 894 (1970), certiorari denied, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 186 (1971).

**4.** Prior to enactment of PELRA, Minnesota statutes also prohibited strikes by public employees and provided that a striking employee's position was terminated automatically by operation of law. *Garavalia v. City of Stillwater*, 283 Minn. 335, 168 N.W.2d 336 (1969); L.1951, c. 146, § 4 (repealed by PELRA, Ex.Sess.L.1971, c. 33, § 17).

his employer on the date when a strike occurs is prima facie presumed to have engaged in a strike on such date or dates."

Under these provisions, it is clear that failure to report for work because of refusal to cross a picket line (commonly termed a sympathy strike) is a "strike" under PELRA.

PELRA's general prohibition against strikes is set out in § 179.64, subd. 1, which provides:

> "*No person holding a position by appointment or employment in the government of the state of Minnesota, or in the government of any one or more of the political subdivisions thereof*, or in the service of the public schools, or of the state university, or in the service of any authority, commission or board or any other branch of the public service, whether included or excepted from this act *may engage in a strike*, nor shall any such person or organization of such persons or its officials or agents cause, condone, instigate, encourage, or cooperate, in a strike *except as may be provided in subdivision* 7." (Italics supplied.)

■ In the provision just quoted, the reference to subd. 7 was added in 1973, when subd. 7 was amended [5] to create two exceptions where strikes by public employees are lawful. Subdivision 7 phrases these two exceptions as follows:

> "Either a violation of section 179.68, subdivision 2, clause (9) [employer's duty to comply with valid arbitration decision], or *a refusal by the employer to request binding arbitration when requested by the exclusive representative pursuant to section 179.69, subdivision 3 or 5, is a defense to a violation of this section*, except as to essential employees * * *." (Italics supplied.) Minn.St. 179.64, subd. 7.

The first exception allows a strike where a public employer refuses to comply with a valid arbitration decision. The second exception (emphasized in the quotation above) allows a strike where an employer and a bargaining unit have reached a certified impasse and the employer elects not to submit the impasse to arbitration. It is this second exception which allowed Council 91 to strike. Plaintiffs argue that this exception also allows their members to engage in a supporting sympathy strike. We disagree.

Under the terms of the second exception a strike is allowed only where there is a "a refusal by the employer to request binding arbitration when requested by the exclusive representative pursuant to section 179.69, subdivision 3 or 5 * * *." In the present case only the two bargaining units represented by Council 91 have reached a certified impasse and have requested and been refused arbitration. Thus, in our opinion, the terms of the second exception allow only these two bargaining units lawfully to strike. The exception refers to an arbitration request by "*the* exclusive representative," which indicates the legislature recognized that different exclusive representatives often request separate bargaining units. Separate bargaining units are particularly important in public sector employment. Among other things, they help prevent disputes involving some public employees from automatically expanding to involve all public employees and thus paralyzing an entire governmental body. In this case the interpretation sought by plaintiffs would allow the strike to spread from the two bargaining units which sought arbitration to all other bargaining units of non-essential employees, even though these bargaining units were not engaged in a certified impasse and had never sought arbitration. As we interpret the second exception in subd. 7, it does not allow this result.

Our interpretation finds support in the context in which the second exception appears. It will be noted that both exceptions in subd. 7 are closely related to arbitration. Both exceptions seem clearly intended to

5. Laws 1973, c. 635, § 8.

allow strikes only as a limited instrument for encouraging effective arbitration. The two exceptions cannot be read either as overthrowing subd. 1's general rule against public employee strikes or as granting public employees the same right to strike as private-sector employees.

The statutory history also supports our interpretation of the statute. The terms of the 1973 amendment which created the two exceptions in subd. 7 must be viewed against the longstanding statutory prohibition against strikes by public employees. When the 1973 Legislature first created exceptions to this prohibition it would not have chosen the limited terminology of subd. 7 if it had intended to allow a strike by all nonessential city employees in all bargaining units because of an impasse involving only two bargaining units.[6]

Our interpretation of PELRA does not achieve an unprecedented result. The states of Oregon (Or.Rev.Stat. § 243.732) and Pennsylvania (Pa.Stat.Ann. title 43, 1101.1101) likewise provide that public employees (other than those engaged in a nonprohibited strike) who refuse to cross a picket line are deemed to be engaged in a prohibited strike. Those states accomplish that result by more specific language than our own statute, but PELRA, read in the light of its statutory development, no less clearly evinces a like legislative intent. What our legislature has withheld, it may of course at any time confer as it may determine to be in the public interest.

Affirmed.

SCOTT, Justice (dissenting).

I strongly disagree with the view of the majority that the Minnesota Public Employment Labor Relations Act (PELRA) prohibits a sympathy strike of public employees in support of a lawful strike by members of other bargaining units of the same public employer. My concerns are two-fold: The majority position fails to apply properly well-established rules of statutory construction in interpreting PELRA, and it frustrates the essential purposes of the Act.

The common-law prohibition against public employee strikes has been abrogated by the provision of PELRA currently at issue, Minn.St. 179.64, subd. 7, (hereinafter subdivision 7), which legalizes strikes by nonessential public employees in two situations (i. e., provides two defenses to the general prohibition against strikes) as follows:

> "Either a violation of [the employer's duty to comply with a valid arbitration decision], or a refusal by the employer to request binding arbitration when requested by the exclusive representative * * * is a defense to a violation of this section [prohibiting public employee strikes], *except as to essential employees.*" (Italics supplied.)

This provision neither expressly limits the defenses to only employees represented by the exclusive representative requesting arbitration nor to only members of the striking bargaining unit. In short, nothing affirmatively appears in the language of PELRA which prohibits the "nonessential" employees involved in this case from striking or cooperating with a lawful strike involving members of other bargaining units of the same public employer. Instead, once one of the two conditions precedent to a lawful strike occurs, the only employees expressly excluded from invoking the defenses of subdivision 7 are "essential employees." .

It is a well-settled rule of statutory construction that the expression of one thing is the exclusion of another. E. g., *Cairl v. City of St. Paul*, 268 N.W.2d 908 (Minn.

---

**6.** We acknowledge plaintiffs' argument that because subd. 7 specifically excludes essential employees it follows that all nonessential employees are necessarily included in its second provision. The exclusion of essential employees is really of no relevance since in this dispute only nonessential employees are involved, who plainly must be involved in a certified impasse and refusal to arbitrate as a precondition to a lawful strike.

1978). *Tynan v. KSTP, Inc.*, 247 Minn. 168, 77 N.W.2d 200 (1956). This rule of construction has even been codified by our legislature. See, Minn.St. 645.19. Consequently, by expressly excluding only "essential employees" from invoking the subdivision 7 defenses, the legislature intended all "nonessential" employees to have the right to invoke these defenses (even if such employees are not engaged in the primary strike, as long as one of the bargaining units of public employees is engaged in a lawful strike pursuant to subdivision 7).

It is worthy of mention that the legislatures of Oregon and Pennsylvania expressly prohibit public employees from honoring a picket line of a striking public employee unit or from otherwise engaging in a sympathy strike.[1] The Minnesota legislature has provided for no similar prohibition in PELRA, and yet has denied other statutory benefits to employees who honor picket lines. See, Minn.St. 268.09, subd. 1(5) (unemployment compensation benefits). This leads to the conclusion that if the legislature had intended the result urged by the City, it would have stated such in a manner consistent with its past practice in dealing with analogous issues or in the manner adopted by the legislatures of Oregon and Pennsylvania.

This construction of PELRA serves more fully the goals the Act was designed to achieve than does the interpretation urged by the City and the majority. PELRA was enacted by the Minnesota Legislature in 1971, and was substantially modified to allow public employee strikes pursuant to subdivision 7 in 1973 after a period of strife in public employment labor relations in this state. The preamble to PELRA proclaims in part that "[u]nresolved disputes between the public employer and its employees are injurious to the public as well as to the parties; adequate means must therefore be established for minimizing them and providing for their resolution." Minn.St. 179.61. By allowing public employee strikes in the situations enumerated in subdivision 7, the legislature obviously concluded that the previous blanket prohibition against public employee strikes did not serve the desired goal of minimizing labor friction. It was also our experience in Minnesota under the prior law that the absolute ban on strikes did not prevent strikes. In light of this historical background, the legislature apparently determined that labor difficulties could be reduced in the public employment field by creating bargaining parity between public employees and employers. PELRA's purpose thus was to provide effective dispute-resolution machinery for public employment labor relations and to grant rights to public employees, through the 1973 amendments to subdivision 7 in question here, which approach the effectiveness of those rights traditionally held by private sector employees.

While it is true that our legislature placed certain threshold restrictions on the public employees' right to strike which are not present in private sector labor relations law, it does not follow, as has been suggested, that once either of the two statutory prerequisites to a lawful public employees' strike has occurred the legislature intended to deprive public employees of any of the devices for mutual aid or protection, including a sympathy strike, available to their counterparts in the private sector. Historically, one of the most fundamental rights possessed by an employee or group of employees is the right to request and enlist the support of other employees. It is well-established that striking private sector em-

1. Or.Rev.Stat. § 243.732 (1977), provides: "Public employees, other than those engaged in a nonprohibited strike, who refuse to cross a picket line shall be deemed to be engaged in a prohibited strike and shall be subject to the terms and conditions of ORS 243.726, pertaining to prohibited strikes."

Pa.Stat.Ann., tit. 43, § 1101.1101 (Supp.1978–79), provides: "Public employees, other than those engaged in a nonprohibited strike, who refuse to cross a picket line shall be deemed to be engaged in a prohibited strike and shall be subject to the terms and conditions of Article X pertaining to prohibited strikes."

ployees have a right to appeal to other employees to respect a lawful primary picket line. See, e. g., *Local 761, IUE v. NLRB,* 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961). As Mr. Justice Frankfurter stated in Local 761, *IUE v. NLRB*: "The objectives of any picketing include a desire to influence others from withholding the employer their services or trade." 366 U.S. 673, 81 S.Ct. 1289, 6 L.Ed.2d 597. Amplifying this concept further, the Court of Appeals for the Fourth Circuit stated in *NLRB v. Union Carbide Corp.* 440 F.2d 54, 56 (4 Cir. 1971):

 " * * * It cannot be denied that respect for the integrity of the picket line may well be the source of strength of the whole collective bargaining process in which every union member has a legitimate and protected economic interest. And any assistance by a union member to a labor organization in the collective bargaining process is for mutual aid or protection of the nonstriking unionist even though he has no immediate stake in the labor dispute."

Consequently, I interpret subdivision 7 as placing limitations only on when a strike may be lawfully engaged in and as placing no limitations on what type of strike may be engaged in. If, therefore, one public employee bargaining unit engages in a lawful strike after the public employer has taken one of the two actions set forth in subdivision 7, all nonessential employees of that public employer may come to the mutual aid and protection of the unit engaged in the strike by engaging themselves in a sympathy strike.

Under a contrary rule, the purposes of PELRA would be greatly frustrated since in many instances the statutory right to strike would be rendered a nullity, a result I must conclude the legislature did not intend. For instance, small bargaining units are not uncommon under our present public employment relations structure. The City even posits a hypothetical case involving a unit consisting of two elevator operators.

Without the effective right to engage the support of their fellow employees, the statutory right to strike of the members of a small unit would be meaningless, since the bargaining power exerted by a unit is largely proportional to the size of the unit. Yet the purpose of all labor relations law—public and private—is to correct substantial bargaining power imbalances between the employer and employees. In the absence of the right to call upon fellow workers for support, no rectification of bargaining imbalances would be achieved under PELRA in cases involving units of relatively few members. Employee units would thus be at the total mercy of the public employer since the employer could deal with small units one at a time, which would result in a gross bargaining imbalance contrary to the purposes of the Act.

In addition, contrary to the stated fears of the City that a small unit would theoretically be able to shut down the operations of one entire unit of government, the right of a small bargaining unit to call upon other employees to strike does not mean that the other employees will automatically choose to engage in a sympathy strike. The circumstances of the situation, including the nature of the dispute, the issues involved, and the economics of the situation, will dictate the willingness of other employees to strike in sympathy or not. In addition, the determination of whether a strike is legal or not is largely controlled by the employer's own actions, since the two subdivision 7 preconditions to a lawful strike are the *employer's* refusal to comply with an arbitration decision and the *employer's* refusal to request binding arbitration when requested by the unit's exclusive representative.

Due to these long-standing principles of statutory construction, the application of which furthers the purposes of the Act, I would hold that when one of the two precipitating events set forth in Minn.St. 179.-64, subd. 7, occurs, all nonessential public employees of the public employer have a

right to withhold their services from the employer or otherwise cooperate in a lawful strike by the other employees. In short, our Act does not protect a public employer against the usual effects that accompany a strike by a group of its employees. PELRA only precludes "essential employees" from striking in sympathy or otherwise and "nonessential employees" from striking when neither of the subdivision 7 precipitating events occurs as to any unit of employees of the same public employer.

TODD, Justice (dissenting).

I join in the dissent of Mr. Justice SCOTT.

YETKA, Justice (dissenting).

I join in the dissent of Mr. Justice SCOTT.

WAHL, Justice (dissenting).

I join the dissent of Mr. Justice SCOTT.