*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GRACE ALEXANDER,

      Plaintiff-Appellee,

v

CITY OF DETROIT and DETROIT ANIMAL
CARE AND CONTROL,

      Defendants-Appellants.

UNPUBLISHED
February 17, 2022

No. 356962
Wayne Circuit Court
LC No. 20-015658-NO

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

In this dog-bite case, defendants moved for summary disposition on the basis of governmental immunity. The trial court denied the motion without prejudice and ordered limited discovery on whether the proprietary-function exception to governmental immunity applies. Defendants appeal by right, and we affirm.

## I. BACKGROUND

Detroit Animal Care and Control (DACC) provides animal care and control services for the city of Detroit (the City). Relevant here, DACC operates a program in conjunction with a volunteer-run organization to place dogs under DACC's care with foster families as a temporary housing and care option intended to facilitate the dog's adoptability. This case arises out of DACC's capture and impoundment of a three-year-old stray pit bull, which was found roaming a city block. A volunteer foster caregiver agreed to provide temporary care and took possession of the dog. While plaintiff was visiting the caregiver's home, the dog bit her face, causing her to suffer injuries requiring surgery. The dog was returned to DACC and euthanized.

Plaintiff filed this lawsuit, claiming that defendants, as the dog's owners, were strictly liable for her injuries under the dog-bite statute, MCL 287.351(1). Plaintiff also alleged that defendants were liable in ordinary negligence because they allowed the dog to be placed in a foster home when they knew, or should have known, that the dog was vicious and prone to attack. Plaintiff alleged that defendants were not engaged in the discharge of a governmental function when the attack occurred, or at any time with respect to fostering the dog.

-1-

In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(7), arguing that as governmental agencies they were entitled to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Defendants argued that DACC, by impounding and placing the dog with a foster-care provider as an alternative to sheltering or euthanizing it, was exercising a governmental function of caring for and controlling the City's stray animals, as authorized by the City's animal-control ordinance.

In response, plaintiff argued that defendants were not exercising a governmental function because they were not "in the course of capturing or otherwise handling the dog" when it bit her. Plaintiff alternatively argued that discovery was needed to determine whether the proprietary-function exception to governmental immunity, MCL 691.1413, applied on the grounds that defendants intended to sell the dog. Plaintiff also alternatively argued that the GTLA did not bar her claim under the dog-bite statute because that statute had necessarily abrogated governmental immunity for damages resulting from an unprovoked bite. In reply, defendants argued that plaintiff failed to plead the proprietary-function exception and did not offer any factual support in support of that claim.

The trial court denied defendants' motion without prejudice and ordered that the "parties will be allowed limited discovery for 60 days on the proprietary-function exception." This appeal followed.[1]

## II. DISCUSSION

_____

[1] We review de novo a trial court's decision regarding a motion for summary disposition. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). When considering a motion under MCR 2.116(C)(7), we accept the factual pleadings as true unless evidence contradicts them. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). We consider the affidavits, pleadings, depositions, and other documentary evidence and determine whether a genuine issue of material fact exists. *Id*. at 429. If there are no questions of fact, whether the claim is barred is a matter of law, but "if a question of fact exists as to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*. We also review de novo questions of statutory interpretation. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

In addition to contesting the denial of summary disposition on the basis of governmental immunity, defendants argue that DACC does not have the legal capacity to be sued. This distinct claim lies outside the scope of this Court's limited jurisdiction to hear defendants' appeal by right of the trial court's denial of their motion for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity. See *Pierce v Lansing*, 265 Mich App 174, 182; 694 NW2d 65 (2005) ("[I]n an appeal by right from an order denying a defendant's claim of governmental immunity, such as this one, this Court does not have the authority to consider issues beyond the portion of the trial court's order denying the defendant's claim of governmental immunity."). Accordingly, we do not address that issue.

A.  GOVERNMENTAL FUNCTION

The parties first dispute whether defendants were engaged in a governmental function when operating the dog foster-care program such that they are generally entitled to tort immunity. See MCL 691.1407(1) ("Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.").

The GTLA defines "governmental function" as "activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."  MCL 691.1401(b).   This definition is interpreted broadly and "requires only that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 327; 869 NW2d 635 (2015) (quotation marks and citation omitted).   To determine if an act constitutes a governmental function, we consider the government's general rather than specific conduct. *Pardon v Finkel*, 213 Mich App 643, 649; 540 NW2d 774 (1995).  Governmental immunity does not provide a shield for ultra vires activity, which is "defined as activity not expressly or impliedly mandated or authorized by law." *Richardson v Jackson Co*, 432 Mich 377, 381; 443 NW2d 105 (1989) (emphasis removed).

DACC's authority regarding the care and control of the City's animals is derived from the City's animal-control ordinance,[2] which grants broad authority in that area.  See 2019 Detroit City Code, § 6-1-1 *et seq*.[3]  The ordinance specifically authorizes DACC to "impound any animal which is stray, loose, running at large," *id.*, § 6-1-9(a), "to seize and impound any stray dog that is on public or private property . . . and to return, sell, transfer, or euthanize any such animal in accordance with this chapter," *id.*, § 6-2-3(a), and to control the operation of, and maintain, the City's animal-control shelter "in the interest of the health and welfare of any animals captured or entrusted to its custody or care," *id.*, § 6-4-1, which "shall seize, capture, impound, and harbor all stray animals," *id.*, § 6-4-3.  The ordinance also expressly permits DACC to "contract with any non-profit corporation that is organized for the purpose of sheltering animals to assist in the care, impoundment, release, or adoption of stray animals not determined to be dangerous by the Animal Care and Control Division." *Id.*, § 6-1-9(c).  No provisions expressly authorize the placement of unclaimed impounded animals with foster-care providers.

DACC's capture and impoundment of the subject pit bull clearly constituted a govern-mental function as expressly authorized under the animal-control ordinance.  2019 Detroit City Ordinance, §§ 6-2-3(a) and 6-4-3.  DACC was also acting within its express authority in making a determination regarding the dog's dangerousness, or lack thereof.  See *id.*, §§ 6-1-9(c) and 6-3-1.  The activity in question, however, is DACC's operation of a foster-care program.  It is undisputed that the subject dog bit plaintiff while in the home, and under the care, of a volunteer foster-care provider, pursuant to an agreement with DACC, while DACC retained rights and

---

[2] The City has statutory authority to adopt an animal-control ordinance.  MCL 287.290.

[3] We refer to the version of the 2019 Detroit City Code in effect when the subject dog bite occurred on July 13, 2020.

responsibilities with respect to the dog's care, control, and disposition. Thus, at issue is whether the ordinance impliedly authorizes DACC to place impounded dogs with foster-care providers for care and housing outside of the City's shelter.

As noted, the ordinance grants DACC broad authority to enforce its provisions, including the care, control, and disposition of the City's animals, and to operate and maintain the City's animal shelter. See 2019 Detroit City Code, § 6-1-4(a). DACC is authorized to impound, *id.*, § 6-1-2, and harbor, *id.*, § 6-4-3, the City's stray animals, but it is also permitted to "sell" or "transfer" unclaimed stray dogs, *id.*, § 6-2-3(a). The governmental activity in "transferring" a stray dog encompasses the adoption of stray dogs by the public, or the conveyance of ownership of such dogs to other shelters or rescue organizations for adoption. The ordinance explicitly permits DACC to "contract with any non-profit corporation that is organized for the purpose of sheltering animals *to assist in the care, impoundment, release, or adoption of stray animals* not determined to be dangerous" by DACC. *Id.*, § 6-1-9(c) (emphasis added). Thus, DACC's fostering activity performed in conjunction with a nonprofit organization in temporarily placing stray, impounded dogs with foster-care providers to ready such dogs for adoption is closely related to and supports its governmental activities in the adoption, transfer, and release of such dogs, as well as in maintaining "the health and welfare of animals of any animals captured or entrusted to its custody or care." Detroit City Code, § 6-4-1. We therefore conclude that the fostering activity was impliedly authorized under the ordinance. Because defendants were engaged in a governmental function, they are immune from tort liability under the GTLA unless the activity falls within one of the enumerated statutory exceptions. *Snead v John Carlo, Inc*, 294 Mich App 343, 356; 813 NW2d 294 (2011).

## B. DOG-BITE STATUTE

Next, the parties dispute whether governmental immunity bars plaintiff's claim under Michigan's dog-bite statute, which imposes strict liability on dog owners for unprovoked bites:

> If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. [MCL 287.351(1).]

Plaintiff asserts that defendants are absolutely liable under that statute, whereas defendants argue that they are immune under the GTLA from the liability imposed by the dog-bite statute.

The dog-bite statute "has consistently been interpreted as creating an almost absolute liability in the dog owner, except in instances of provocation." *Tate v Grand Rapids*, 256 Mich App 656, 658; 671 NW2d 84 (2003) (quotation marks and citations omitted). However, this Court has recognized that claims under the dog-bite statute are subject to governmental immunity:

> Plaintiff argues that his cause of action is not one of "tort liability" but rather "strict liability" and, thus, is not within the reach of the GTLA. . . . The GTLA provides governmental agencies immunity from "tort liability." At issue is whether the dog-bite statute is outside the reach of the "tort liability" provision of the GTLA. We conclude that it is not. [*Id*. at 659 (footnote omitted).]

This Court elaborated as follows:

> The GTLA unambiguously grants immunity from *all* tort liability, i.e., civil wrongs for which legal responsibility is recognized, regardless of how the legal responsibility is determined, except as otherwise provided in the GTLA. Consequently, plaintiff's argument that his claim is exempt from the GTLA because it is not one of tort liability is without merit. Accordingly, the trial court properly dismissed plaintiff's strict liability claim on the ground that it was barred by governmental immunity. [*Id.* at 660-661.]

Thus, under *Tate*, plaintiff's claim under the dog-bite statute is subject to governmental immunity.

Moreover, we disagree with plaintiff's argument that the Legislature intended to abrogate governmental immunity in connection with the dog-bite statute. "A central tenant of . . . governmental immunity is that the state may be held liable in a court of law only when the state has expressly permitted a suit against it." *Odom v Wayne Co*, 482 Mich 459, 477; 760 NW2d 217 (2008). In enacting the GTLA, the Legislature did not include matters relating to animal care or control among its listed exceptions. And, in enacting the dog-bite statute, the Legislature did not specify that governmental agencies came under the strict liability imposed for injuries resulting from dog bites. Indeed, MCL 287.351 neither defines "owner of the dog" nor mentions the state or its political subdivisions. See *Ballard v Ypsilanti Twp*, 457 Mich 564, 575-576; 577 NW2d 890 (1998) ("There is no express waiver of governmental immunity from liability under the [Recreational Land Use Act], because the act does not define the persons to whom it applies to include either the state or its political subdivisions."). If the Legislature meant to limit governmental immunity in such circumstances it could have expressly done so, but it did not.

For these reasons, we reject plaintiff's argument that governmental immunity under the GTLA does not apply to a claim brought under the dog-bite statute.

## C. PROPRIETARY-FUNCTION EXCEPTION

Finally, defendants argue that the trial court should have granted summary disposition because plaintiff failed to plead the proprietary-function exception to governmental immunity in her complaint. We disagree.

The exceptions to governmental immunity are narrowly construed. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). The proprietary-function exception, MCL 691.1413, provides as follows:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees.

In this case, plaintiff did not plead the proprietary-function exception in her complaint, but rather maintained generally that defendants were not engaged in a governmental function with

respect to their fostering activity. Plaintiff then invoked the proprietary-function exception in response to defendants' motion for summary disposition. At that early stage of the litigation, plaintiff still had the right to amend her complaint, as a matter of course, under MCR 2.118(A)(1), which permits a party to "amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party." Because defendants' motion for summary disposition did not constitute a responsive pleading, see MCR 2.110(A); *Huntington Woods v Ajax Paving Indus, Inc*, 179 Mich App 600, 601; 446 NW2d 331 (1989), plaintiff's right to amend her complaint has not expired.

Defendants further argue that they are entitled to summary disposition because plaintiff's argument that they intended to sell the dog for a pecuniary benefit was "unsubstantiated" and "demonstrably false." In effect, defendants are challenging the trial court's decision to defer ruling on the applicability of the proprietary-function exception until pertinent discovery has been completed. "Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete," but "summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25, 672 NW2d 351 (2003).

DACC's director submitted an affidavit attesting that DACC does not currently charge a fee for adopted dogs and that its activities are supported by taxes, not profits. Although these assertions tend to refute plaintiff's claim that the proprietary-function exception to governmental immunity applies, plaintiff is not in position to challenge these statements until she obtains discovery. Further, the facts are largely undeveloped regarding whether DACC's nonprofit partner in operating the foster program charges for adoptions, or how that nonprofit's fostering activities are supported by donations, grants, or otherwise, and whether DACC receives any pecuniary benefit from the partnership. Because further evidentiary development of such issues could shed light on whether plaintiff can maintain her claim that the proprietary-function exception applies to preclude governmental immunity, we conclude that the trial court did not abuse its discretion in allowing discovery in that regard.

In sum, we find no error in the trial court's denial of defendants' motion for summary disposition predicated on governmental immunity pending discovery in connection with the proprietary-function exception. Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro